**WESTERN IRR. CO., Inc., v. REEVES COUNTY LAND CO.**

No. 4733.

Court of Civil Appeals of Texas.
El Paso.

May 31, 1950.

On Appellee's Motion for Rehearing
Aug. 2, 1950.

Appellant's Rehearing Denied
Sept. 20, 1950.

Irby L. Dyer, Whitaker, Turpin, Kerr, Smith & Brooks, Midland, for appellant.

Ewers, Cox, Dyer & Brentsen, McAllen, J. H. Starley, J. M. Preston, Pecos, for appellee.

McGILL, Justice.

This is an appeal from an order of the District Court of Reeves County, 109th Judicial District, overruling a plea of privilege filed by defendant Western Irrigation Company, Inc., to be sued in Lubbock County, the county of its residence.

The suit was instituted by Reeves County Land Company, a Texas corporation having its principal office and place of business in Pecos, Reeves County, and O. I. Cox, E. C. Thomas and E. G. Pinkston, residents of Hidalgo County, against Western Irrigation Company.

Plaintiffs alleged that Reeves County Land Company was the owner of "the N. ½ of the S. E. ¼, and the E. ½ of the

S. W. ¼ of Section 14, Block C-Nine (C-9), Public School Lands, Reeves County, Texas"; that the land was purchased by Reeves County Land Company in December, 1947, and was broken, cleared, levelled and prepared for planting cotton thereon for the year 1948; that the land was leased to plaintiffs Cox, Thomas and Pinkston, operating as a co-partnership under the name Mestenas Farms for the crop year of 1948, for and in consideration of one-fourth of all cotton and cotton seed raised thereon during the term of the lease; that in December 1947 plaintiffs, acting through their duly authorized representatives, entered into an oral contract with defendant Western Irrigation Company, acting by and through W. F. Oliver, its duly authorized representative, whereby defendant agreed to drill three water wells upon said tract of land for irrigation, at a cost of $5 per foot for drilling, $5 per foot for casing, and $1 per foot for perforation of casing; that defendant expressly agreed to complete said wells as a turnkey job including the installation of necessary pumps and power units and contracted that all three wells would be completed and pumping water by March 15, 1948; that defendant knew that the wells were to be used for irrigation purposes for the cotton crop for the year 1948, and knew that time was of the essence of the contract; that the contract was made and fully performed in Reeves County; that the plaintiffs Cox, Thomas and Pinkston, relying upon defendant's representations that the wells would be completed by March 15, 1948, prepared to commence planting on that date or shortly thereafter and were willing and anxious to commence cultivating the land for the cotton crop for the year 1948; that defendant wholly failed to drill and equip said wells by March 15, 1948; that the first well was not completed until May 5, 1948, the second well until May 8, 1948, and the third well until May 12, 1948; that plaintiffs had paid defendant the agreed consideration owing to it under the terms of the contract; that by reason of defendant's delay in completing the wells plaintiffs Cox, Thomas and Pinkston were delayed in planting the cotton crop for the year 1948

and 100 acres of the crop was destroyed by a fall freeze and the balance thereof, 445 acres, produced less cotton because of delay in planting due to lack of water because of defendant's failure to complete the wells according to the terms of the contract. Plaintiffs sought to recover their proportionate damages for the alleged loss of cotton. In due course defendant filed its plea of privilege to be sued in Lubbock County. This plea conformed in all respects with Rule 86, Texas R.C.P. By their controverting plea plaintiffs alleged all the facts substantially as set forth in their petition as above outlined, and sought to sustain venue in Reeves County under Subsection 23 of Article 1995, R.C.S., Vernon's Ann.Civ.St. art. 1995, subd. 23.

Appellant's points are briefly summarized: The court erred in overruling defendant's plea of privilege because (1) plaintiff wholly failed to make any proof that W. F. Oliver was the agent or representative of the defendant corporation in making the alleged oral contract; (2) plaintiff failed to prove that W. F. Oliver, if he was an agent or representative of defendant had any authority to act for and bind defendant corporation in making the alleged oral contract; (3) insofar as the plaintiffs Cox, Thomas and Pinkston are concerned all the evidence shows that the alleged oral contract was between Reeves County Land Company, a corporation, and defendant Western Irrigation Company, and that Cox, Thomas and Pinkston were mere tenants on the land and they are not entitled to recover for any breach of the alleged contract; (4) the court erred in admitting over defendant's objection testimony concerning a pre-corporation agreement whereby the land was to be acquired by the corporation Reeves County Land Company and contracts to drill water wells were made in its behalf where plaintiffs had plead that the land was owned by the corporation and the contract in question was made by it.

Mr. W. K. Bonham, a witness for plaintiffs, testified that he was a stockholder of the Reeves County Land Company; that the Reeves County Land Company was

the owner of two sections of land in Reeves County, being Section 14 in Block C-9, Public School Lands, and Section 194, H. & G. N. Ry. Co., it having purchased said land in November 1947; that when the company purchased the land it was contemplated that 400 acres of Section 194 should be farmed by two sons of H. A. George and 200 acres thereof by Mestenas Farms, a partnership composed of Pinkston and Thomas, and that Mestenas Farms was to farm Section 14; that tenancy agreements were made in accordance with this plan immediately after the purchase of the two sections by the Reeves County Land Company in November 1947; that witness and H. A. George (another stockholder of the Reeves County Land Company) made arrangements for drilling and equipping six water wells, three on Section 14 and three on Section 194; that this arrangement was made about December 10, 1947, with W. F. Oliver, who was representing Western Irrigation Company; that the agreement insofar as it covered the three wells on Section 14 was an oral agreement and was substantially as alleged; that he, Bonham, and George were representing the owners of the two sections as well as the tenants in making the agreement; that the agreement was made at a conference in the Brandon Hotel in Pecos at which witness, George and Oliver were present; that when he, Bonham, returned on April 5, 1948 and found that the wells were incomplete he contacted the Western Irrigation Company numerous times by telephone and believed that he had gone up there; he talked to Oliver and sometimes to Ivey over the phone and in explanation of the delay they told him the pumps and equipment were in El Paso, were on the road, and would probably be there "in the morning"; that he had mentioned to Ivey the fact that through Thomas they could buy pumps in Houston, and Ivey had said "Listen, if you want to buy a Chevrolet and you can't get delivery, do you think you'd go buy a Ford in place of it? We are selling Western pumps, and we are not going off and buy any off breed of any other make"; that plaintiffs had paid the Western Irrigation Company around $65,-000 for the drilling and completing of the six wells. E. C. Thomas, Secretary-Treasurer of Reeves County Land Company testified:

"Q. With reference to the Section 194 wells, the wells on that section, Mr. Thomas, and following the conference you had in Orville Cox's office in McAllen in the Middle of the summer of 1948, did you subsequently have a telephone conversation with W. L. Ivey, President of Western Irrigation Company about the payment of some money? A. Yes, sir.

"Q. Did you call him, or did he call you? A. To the best of my recollection I had a couple of conversations with Mr. Ivey relative to the work that was being done on Section 194, and the conversation that I had with him with reference to the draft that would pay the final payment.

\* \* \* \* \* \*

"Q. In other words, did you regularly receive bills and communications from the Western Irrigation Company addressed to Reeves County Land Company concerning the wells on Section 194 and on Section 14? A. Yes, sir."

The testimony above outlined, together with other evidence appearing in the record is ample to sustain an implied finding by the trial court (no Findings of Fact having been requested or filed) that appellant undertook the performance of the alleged contract and in fact did perform it and received and accepted the benefits thereof. Therefore, whether Oliver was in fact the agent of appellant and had authority to enter into the contract in its behalf is immaterial. If such agency or authority did not in fact exist, a defense on these grounds was not available to appellant, it having performed the contract and received the benefits thereof. Kincheloe Irrigating Co. v. Hahn Bros. & Co., 105 Tex. 231, 146 S.W. 1187. Appellant thereby ratified the contract and made it good by adoption. Ann. 7 A.L.R. 1146. Although plaintiffs did not plead ratification or adoption of the alleged contract by appellant, the testimony above outlined was admitted without objection and these issues were tried by implied consent and must

therefore be treated in all respects as if they had been raised by the pleadings under Rule 67, R. C. P.

Bonham's testimony, though meager on the subject, is sufficient perhaps to warrant an inference or implied finding that in making the oral contract with Oliver, Bonham and George were acting for the Mestenas Farms as well as the Reeves County Land Company. He testified:

"Q. Who were you representing when you made the agreement with Mr. Oliver? A. The owners of the two sections.

"Q. Were you also representing the tenants? A. Well, since the owners were the tenants, you could say so.

\* \* \* \* \* \*

"Q. This original conversation you talked about, that took one hour, in the Brandon Hotel, that was entirely with Mr. Oliver, was it not? A. Yes, sir.

"Q. Who else was present at that time? A. Mr. George.

"Q. Was he present throughout the entire transaction? A. Yes, sir. Then we called Mr. Pinkston over and told him the details of the agreement, in the presence of Mr. Oliver, told him the completion date and just a resume of what had been agreed on, and the four of us closed the conversation with an agreement with Oliver to commence immediately, immediately start drilling and equipping the wells."

■ From Bonham's testimony and Thomas' testimony it appears that the Mestenas Farms was a co-partnership composed of O. I. Cox, E. C. Thomas and E. G. Pinkston, who had agreed to lease the portions of Section 14 in question from the Reeves County Land Company and to farm such land. Although the evidence does strongly tend to establish the fact that the contracting parties to the alleged oral contract were the Reeves County Land Company and the Western Irrigation Company, yet it is ample to sustain an implied finding that such contract was made for the benefit of the Mestenas Farms or the partnership of Cox, Thomas and Pinkston, as well as the Reeves County Land Company. Certainly

the Mestenas Farms was as much interested in the contract as the Reeves County Land Company, since three-fourths of the cotton to be raised on the land inured to the benefit of the partnership. This is all that was necessary to establish a prima facie cause of action in favor of Cox, Thomas and Pinkston, as well as the Reeves County Land Company. Moore v. Dallas Post Card Company, Tex.Civ.App., 215 S. W.2d 398, Wr.Ref. n. r. e.; 10 Tex. Jur. p. 483, Sec. 280.

We find no error in the order overruling defendant's plea of privilege and such order is affirmed.

On Appellee's Motion for Rehearing.

On further consideration we have concluded that we were in error in granting appellant's motion for a rehearing and in reversing the judgment of the trial court which overruled defendant's plea of privilege, and that our original opinion and judgment which affirmed the judgment of the trial court is correct.

In connection with our holding that appellant ratified the verbal contract alleged to have been made by Oliver we desire to cite an additional authority—Leon County v. Vann, 86 Tex. 707, 27 S.W. 258.

■ It seems to be well settled that the owner in building and construction contracts does not lose or forfeit his right to damages for delay by permitting the contractor to complete the work after the expiration of the time limit fixed by the contract. 7 Tex. Jur. p. 588, Sec. 38; 9 Am. Jur. p. 36, Sec. 48; 17 C.J.S., Contracts, § 493, page 998; Annotation 5 L.R.A., p. 272; Phillips, etc., Const. Co. v. Seymour, 91 U.S. 646, 23 L.Ed. 341.

■■ Where time is of the essence of the contract and the breach material, the owner is put to an election of continuing performance or of ceasing to perform and any action indicating an intention to continue will operate as a conclusive choice not depriving him of a right of action for the breach which has already taken place, but depriving him only of any excuse for ceasing performance on his own part. Wil-

liston on Contracts, Vol. III, Sec. 1334, page 2389. See also Annotation 143, A.L.R. 489. We think there is a complete analogy between the situation presented here and that in building and construction contracts, and that the rule applicable to building and construction contracts is applicable here. There can be no question but that appellee Reeves County Land Company under the record here elected to continue the contract after appellant had breached it by its failure to complete the wells on Section 14 by March 15, 1948. In view of such election appellee Reeves County Land Company by paying for these wells according to the terms of the contract was doing only what it was legally obligated to do and it did not thereby waive its cause of action for the breach which had occurred.

It is therefore ordered that appellee's motion for rehearing be granted; that our opinion written on appellant's motion for rehearing be withdrawn and the judgment rendered in accordance therewith to be set aside; that our original opinion be reinstated and that in accordance therewith the order of the trial court overruling defendant's plea of privilege be and it is in all respects affirmed.