**Earl MORRIS, Appellant,**

v.

**R. M. JONES, Appellee.**

**No. 6794.**

Court of Civil Appeals of Texas.

Beaumont.

April 21, 1966.

Rehearing Denied June 8, 1966.

Clarence D. Cain, Everett H. Cain, Liberty, for appellant.

J. C. Zbranek, Liberty, Bryce A. Taylor, Burnet, for appellee.

PARKER, Justice.

R. M. Jones sued Earl Morris on a parol contract and in the alternative upon quantum meruit for the pasturing, caring for, and feeding cattle owned by Earl Morris and for reasonable attorney's fees under Article 2226, Vernon's Ann.Rev. Civ.St.Tex. Upon quantum meruit issues a jury verdict was returned in favor of Jones upon which judgment was entered for Jones against Morris for the total sum of $4,327.00.

Defendant Morris' first point of error is:

"The Court should not have denied Defendant the right to file his First Amended Original Answer when there was no showing that such would operate as a surprise to Plaintiff."

This suit was originally filed in the district court of Walker County. Defendant Morris filed a plea of privilege and answer of general denial on April 17, 1963. Jones' first amended original petition was filed September 23, 1964. Morris filed his first amended original answer in the district court of Liberty County on October 20, 1964, the date set for trial. This pleading for the first time contained affirmative defenses. Plaintiff Jones objected to the filing of defendant's amended pleading for the reason that it was not seasonably filed, not filed in accordance with the rules and that the same constituted new matters which were a surprise to Jones. This first amended original answer of defendant's was tendered for filing 18 months after his original answer was filed on April 17, 1963. The trial court refused to allow Morris to file his first amended original answer, sustaining Jones' objections. The record shows no abuse of discretion on the part of the trial court in refusing to allow the filing of defendant's first amended original answer 18 months after the original answer was filed containing a simple general denial only. Rule 63, Texas Rules of Civil Procedure. Defendant did not withdraw his announcement of ready but proceeded to trial. Defendant's point of error No. 1 is overruled.

In answer to special issues, numbered below, the jury found:

1. That plaintiff R. M. Jones pastured and cared for the 123 heifer calves and 2 bull calves mentioned in plaintiff's petition, belonging to defendant Earl Morris with knowledge on the part of Morris that the same was being done.

2. The fair market value of the pasturing and care of said calves by plaintiff was $3,000.00.

3. Plaintiff R. M. Jones made a demand on defendant Earl Morris for payment of the account made the basis of this suit at least 30 days prior to March 22, 1963.

4. $1,000.00 would fairly and reasonably compensate the attorneys for the plaintiff for bringing plaintiff's action on his account.

From the judgment and the findings of the jury it appears the case was submitted to the jury on the alternative plea of quantum meruit and judgment entered thereon.

Defendant's points of error 2, 3, 4, 5, 6, and 7 will be considered together, and are as follows:

"2. The Court should not have entered judgment for the Plaintiff on the verdict of the jury, on Plaintiff's action on contract, because it was established by the undisputed evidence and admission of Plaintiff that Plaintiff had willfully failed to perform part of an indivisible contract made the basis of his suit and further that the contract was not as alleged by Plaintiff.

"3. The Court should not have entered judgment for the Plaintiff on the verdict of the jury, because, having breached the indivisible contract between the parties, Plaintiff was not entitled to recover on quantum meruit without a finding of the reasonable value of the services rendered and knowingly accepted by Defendant.

"4. The Court should not have entered judgment for the Plaintiff on the verdict of the jury,, because the undisputed evidence showed that Plaintiff's suit on quantum meruit was based on partial performance of an indivisible contract involving approximately 360 head of cattle, pastured and cared for by Plaintiff, for which Defendant had paid Eight Thousand Two Hundred and Thirty-Two

and 84/100ths. ($8,232.84) Dollars to Plaintiff and there was no finding as to the reasonable value of services rendered and accepted by Plaintiff as to the entire contract, upon which to credit said payment.

"5. The Court should not have overruled Defendant's exception and objection No. 3 to Special Issue No. 1 because the issue should not have been confined to a part only of the cattle involved and for other reasons there stated.

"6. The Court should not have overruled Defendant's exception and objection to Special Issue No. 3—when the undisputed evidence showed Plaintiff was not entitled to recover on his alleged account or for any item as claimed therein.

"7. The Court should not have submitted issues on attorney's fees or have rendered judgment therefor where Plaintiff failed to establish that he was entitled to recover the amount claimed to be presented for payment and no claim for the reasonable value of services accepted by Defendant on quantum meruit, was ever presented to Defendant."

It is undisputed that defendant delivered 125 head of cattle to plaintiff to be pastured and cared for on plaintiff's premises. Under the contract plaintiff was to be paid 12 cents per pound on the gain. The agreement was the cattle were to be delivered to Jones in October of 1961 by Morris and picked up in September of 1962. Morris was to pay for care of the cattle and for pasturage on plaintiff's land. It was not a gratuitous service. Defendant Morris testified that the reasonable and customary price for care and pasture of cattle was $1.50–2.50 per head per month. Jones spent approximately $1,200.00 on feed for the calves, checked the cattle an average of once a week, and when he gathered the cattle it took five men three days to do so. The calves were 27,000 pounds heavier when picked up by Morris than when delivered

to the ranch of plaintiff. The undisputed proof shows that defendant was benefited by at least $5,670.00 less the cost of the care and pasturing. The jury found that the plaintiff did pasture and care for the cattle with the knowledge of the defendant and that the fair market value of such pasturage and care was $3,000.00. Defendant accepted the benefits of the gain in weight of the calves and sold them at a profit.

■ Defendant and plaintiff had one oral contract containing two agreements. One was for the care and pasturage of 246 head of steers. This contract had been fully performed and paid for on September 6, 1962, before any of the calves involved in this suit were weighed and picked up by defendant. The compensation for caring and pasturing of the steers was upon a different basis than for the calves. The contract relating to the 246 head of steers from the record appeared to have been performed by the parties, respectively, and such performance accepted. In the light of the acts of the parties the contract as to the calves was divisible from the contract as to the steers. Agreement as to the steers was not dependent upon the agreement as to the calves. Smith v. Crosby, 47 Tex. 121; 13 Tex.Jur.2d, § 120, pp. 283, 284, states:

"A frequently used test to determine divisibility is whether or not the consideration for the agreement is apportionable, either expressly or by necessary implication. More specifically, a contract is generally held to be divisible where the part to be performed by one party consists of several distinct and separate items and the price to be paid by the other party is either apportioned to each item or left to be implied by law. Again, a contract for the sale of different articles at the same time and for separate prices is usually held divisible unless the contract itself, or the acts of the parties or the nature of the subject matter, compels a contrary conclusion."

To the same effect is 2 Elliott on Contracts, § 1543:

"* * * A divisible contract is one which from its nature and purposes is susceptible of division and apportionment, and has two or more parts in respect to matters and things embraced by it, and not necessarily dependent on each other, and the parties do not intend that they shall be. The fact that the contract is embraced in one instrument does not make it entire and indivisible. Whether or not the contract is entire or divisible depends on the intention of the parties. The intention is to be ascertained from the language used, the subject-matter of the contract, and from a consideration of all the circumstances."

The contract on the calves required Jones to dehorn, brand, castrate and care for them just as he would his own. He didn't dehorn, castrate and brand his own cattle or defendant's calves because of a screw worm epidemic. Neither did defendant furnish bulls for breeding them as agreed upon. Therefore, plaintiff brought suit upon quantum meruit. The steers were not involved in this suit, nor did defendant have any affirmative pleading. Plaintiff's suit on quantum meruit was not a recovery upon contract.

Plaintiff's petition limited itself to 123 heifer calves and 2 bull calves. Special issue No. 1 was properly confined to the cattle involved in the suit.

Plaintiff elected to try his suit on quantum meruit and not upon the alleged contract with the attached itemized account.

Prior to March 22, 1963, the evidence shows that Jones sent weight tickets on the cattle to Morris, called Morris on the telephone demanding payment and thereafter sent a letter with an itemized account to Morris. Letters and oral demands are sufficient under Art. 2226. Huff v. Fidelity Union Life Ins. Co., 158 Tex. 433, 312 S.W. 2d 493 (1958). The claim was based on pasturage and care of the calves. Demand of money payment was made by plaintiff of defendant, although he did not recover in this suit the amount demanded. Plaintiff rendered personal services and labor in the care of the cattle which he fed, ear ticked, drenched and sprayed, and saw that the heifers were bred with his own bulls. He used his experience, his employees and their physical labor and services in moving them to a better pasture, and in keeping up a number of the calves delivered to him to feed and care for daily until strong enough to put on the range. He relied upon his judgment in not branding and dehorning the defendant's calves because of the dangers from a screw worm epidemic. This decision was sustained by other cattlemen as being sound. All of appellant's (defendant's) points of error are overruled.

Judgment affirmed.