**Jim MORGAN, Appellant,**

v.

**Grady SINGLEY, Appellee.**

**No. 8504.**

Court of Civil Appeals of Texas, Texarkana.

Dec. 13, 1977.

Rehearing Denied Jan. 31, 1978.

Thomas R. Grett, Longview, for appellant.

Guy N. Harrison, Longview, for appellee.

CORNELIUS, Chief Justice.

Grady Singley, who was the plumbing, heating and air conditioning subcontractor for the general contractor M. Clint Brown Company, entered into subcontracts with Jim Morgan by the terms of which Morgan was to perform the plumbing portion of Singley's contracts on the Citizens Resource Center and the Student Center at LeTourneau College in Longview. The contracts required Singley to pay Morgan $31,000.00 for the Resource Center and $48,845.00 for the Student Center. They also required Morgan to perform his work in accordance with certain plans and specifications, and obligated Singley to pay Morgan monthly progress payments based on the work completed to that time. The work began and Morgan was paid his monthly progress payments through June of 1974. The last payment was made to Morgan on June 26, 1974, for work and materials for the month of May. Morgan received no payment after June 26th but he continued his work until September 1, 1974. At that time Morgan was told that payments for his work in July and August had been made by the general contractor to Singley but that Singley had not passed them on. Upon that discovery, Morgan promptly removed his workmen from the job sites and performed no more services under his contracts. In response, Singley used some of his own workmen and also employed another plumbing contractor, on a cost-plus basis, to complete the work. He then sued Morgan to recover the expenditures in excess of the contract prices. Morgan counterclaimed seeking payment for work done but not paid for and for the value of certain materials allegedly left at the job sites.

The testimony relating to the reasons for Singley's withholding of Morgan's progress payments was conflicting. Both Singley and the general contractor's superintendent agreed that payment was made to Singley for Morgan's work as it progressed but that the superintendent instructed Singley to withhold Morgan's share until certain defects and deficiencies in Morgan's work had been remedied. Singley contended the defects were never remedied. Morgan denied these assertions. He testified that Singley told him that the general contractor made no payments in July and August. Morgan also contended that any defects in his work had been remedied prior to his leaving the job sites. No witness was able to recall the exact dates when defects or deficiencies in the work were discovered or when Morgan was asked to remedy them. Morgan testified that much of the non-complying work was approved by an inspector who was later overruled by another inspector. All of the inspectors who testified denied ever approving any of the defective work.

Trial was to a jury which found, in effect, that Morgan abandoned his work without justification; Morgan failed to perform his work according to the plans and specifications; Morgan's abandonment proximately caused Singley to expend $38,087.82 to complete the work; and that Morgan had substantially completed the work on the Resource Center, for which he was due an additional $2,691.93 by way of offset against Singley's recovery. Certain other jury findings were disregarded, of which action neither party has complained. Based upon the jury findings and undisputed evidence showing that Singley had paid $90,903.09 for the two jobs which Morgan had contracted to perform for a total of $82,795.00, the court awarded Singley a recovery of $8,108.09 less the $2,691.93 offset for Morgan's unpaid work on the Resource Center, for a net of $5,416.16.

Four points of error have been assigned. The first two contend that the jury finding that Morgan breached the contracts by abandoning the work without justification, and the trial judge's implied finding (Tex.R.Civ.P. 279) that Singley's withholding of the progress payments did not amount to a breach, are both against the great weight and preponderance of the evidence. It is argued that, as it was undisputed that Singley failed to pay the July and August payments, that fact alone establishes that Singley breached the contract

and that Morgan's subsequent abandonment of the work was justified and could not have constituted a breach, citing *Taylor-Fichter Steel Const. Co. v. Curtis,* 144 S.W.2d 285 (Tex.Civ.App.Beaumont 1940, writ dism'd judgmt cor.), and *Kidd-Scruggs v. Tyler Hotel Co.,* 270 S.W. 566 (Tex.Civ. App.Texarkana 1925, writ ref'd). It is, of course, the general rule that the *unjustified refusal or failure* to pay the agreed installments would constitute a breach of the contract. But it is now recognized to be the rule that reciprocal promises in a contract are presumed, in the absence of an intention to the contrary, to be mutually dependent rather than independent, and that the breach of one will excuse performance of the other. See *K & G Construction Company v. Harris,* 223 Md. 305, 164 A.2d 451 (1960). In speaking of the refusal of an owner or general contractor to pay a contractor or subcontractor because his work has been defective, Professor Corbin states:

> "If the refusal to pay an installment is justified on the owner's part (Singley in our case), the contractor (Morgan in our case) is not justified in abandoning work by reason of that refusal. His abandonment of the work itself will be a wrongful repudiation that goes to the essence, even if the defects in performance did not." (Parenthesis supplied.) 3A A. Corbin, Contracts, Sec. 708, at 333 (1972).

Thus, if Morgan's performance had not been in compliance with the plans and specifications as agreed, Singley's refusal to pay the progress payments would have been justified and Morgan's abandonment of the work, rather than Singley's refusal to pay, would have constituted the breach of the contracts. As to whether Morgan's performance was in compliance with the contracts or was defective at the time Singley discontinued payment, the evidence was highly contradictory with considerable evidence pro and con. From a review of the entire record we cannot say that either the jury's finding or the trial judge's implied finding concerning the party responsible for the breach of the contracts is against the great weight and preponderance of the evidence.

Morgan urges that the general contractor's payment to Singley for Morgan's work constituted an acceptance of the work and Singley had a duty to pass the payment on to Morgan. There was testimony, however, that the payments to Singley were with the reservation that they should not be passed on to Morgan until the work defects were remedied. In those circumstances, the payment to Singley would only constitute a conditional acceptance of Morgan's performance, and would not preclude a finding that Singley was justified in withholding payments until the defects were remedied.

Point No. 3 asserts that the jury's answer to Special Issue No. 6 is ambiguous and that the court was in error in basing a judgment thereon. Issue No. 6 inquired what amount of money Singley "was required to expend to complete the work JIM MORGAN had contracted to perform?" The jury answered: "$38,087.82." Morgan contends that the issue is defective because it is not clear whether the answer of the jury represents the amount expended above that paid to Morgan or the amount expended above the contract price.

We have concluded that the issue is not ambiguous and there is ample evidence in the record to support the jury's answer of $38,087.82. We think it clear that, when the issue inquired what amount of money Singley was required to expend to complete the work, it was referring to the amount of money required to finish the work remaining after Morgan abandoned the job. That amount was easily calculated, if the jury believed Singley's evidence. He testified that he paid another contractor $25,023.44 to complete the work; he was required to purchase an additional $7,096.88 worth of materials; and he had to use an additional 542.5 hours of his crew's labor, at a net cost to him of $11.00 per hour, which amounted to $5,967.50. The total of these three figures is $38,087.82, which was the jury's answer to Special Issue No. 6.

The fourth point contends that the jury's answer to Special Issue No. 13 is against the great weight and preponder-

ance of the evidence. That issue, in conjunction with previous ones, inquired of the jury what amount was owing Morgan (on a quantum meruit basis) for the work he had done on the Resource Center. The jury answered $2,691.93. Morgan asserts that the answer is not supported by the evidence because the jury deducted 10% retainage from the total contract price for the Resource Center before it calculated the value of the percentage of the work completed by Morgan. The assertion is based upon Singley's speculation in his motion for judgment to the effect that:

"That to arrive at the answer to Issue 13, regarding the Resource Center, the jury took the contract amount of $31,000.00 and reduced it 10% retainage, leaving a contract amount of $27,900.00. They further multiplied that by 98%, finding that the job was 98% complete, leaving a figure of $27,342.00 and taking into account the evidence showed (sic) that SINGLEY had already paid $24,651.07, leaving the sum of $2,691.93, therefore, evidencing that the jury felt that Plaintiff had underpaid Defendant on the Resource Center contract."

We agree that the 10% retainage should not have been deducted by the jury from the contract price when determining the amount due Morgan for his substantial performance of the work on the Resource Center. Retainage is designed to protect laborers and materialmen by delaying the disbursement of a portion of the contract price until those parties have had an opportunity to perfect or enforce their claims against the fund so created. It should not be used to reduce the contract price in a suit between a contractor and a subcontractor pertaining to their respective rights under the whole contract. But we have no way of determining whether or not the jury considered the retainage in arriving at their answer. There is nothing in the record, other than Singley's speculation in his motion for judgment, to indicate they did so. We do know, however, that for the unpaid value of the work on the Resource Center the jury allowed a figure of only $2,691.93, which when considered with the $24,651.07

the undisputed evidence shows had already been paid to Morgan on that contract, represents only approximately 88% of the contract price of $31,000.00. That conflicts with the uncontroverted evidence which established that the Resource Center was *at least* 98% complete when Morgan left the job. Singley conceded that fact, while Morgan contended that the job was 100% complete. As the jury's answer to Issue No. 13 is, in effect, less than that testified to by any witness, the answer is without support in the evidence and results in the judgment for Singley being excessive. See *Houston Belt & Terminal Ry. Co. v. Lynch,* 221 S.W. 959 (Tex.Com.App.1920, judgmt adopted); *Rector v. DeArana,* 385 S.W.2d 503 (Tex. Civ.App.El Paso 1964), rev'd and rem'd to Civ.App., 398 S.W.2d 911 (Tex.1966); *Vassar v. State,* 382 S.W.2d 321 (Tex.Civ.App. Beaumont 1964, no writ); *State v. Spears,* 374 S.W.2d 250 (Tex.Civ.App.Beaumont 1963, no writ).

■ It is the duty of this Court to determine the amount that the judgment is excessive. *Texas Pipe Line Co. v. Hunt,* 149 Tex. 33, 228 S.W.2d 151 (1950); *Rector v. DeArana,* supra. The jury could have found a figure representing a 98% completion of the Resource Center, but not a lesser figure. They could, of course, have found a figure representing 100% completion, because Morgan testified that the work was 100% completed. But as pointed out by the opinion of the Court of Civil Appeals in *Houston Belt & Terminal Ry. Co. v. Lynch,* 185 S.W. 362 (Tex.Civ.App.Galveston 1916), aff'd, 221 S.W. 959 (Tex.Com.App.1920, judgmt adopted), which involved an analogous situation, it is evident that as the jury found the amount to be less than 98%, the lowest figure testified to by any witness, in the nature of things they would in no event, though they had been confined within the range of the testimony, have found a figure greater than 98%. Based upon the finding that Morgan was entitled to an offset of only $2,691.93, Singley recovered judgment for $5,416.16. As the jury could have found under the evidence no less than a figure representing a 98% completion of the Re-

source Center (resulting in an offset of $5,728.93), we are authorized to hold that the verdict is excessive by $3,037.00, and to require a remittitur of that amount, according to the holding of the Commission of Appeals in *Houston Belt & Terminal Ry. Co. v. Lynch,* 221 S.W. 959, supra. In that case the court said:

"It is true that the assignment of error sustained by the Court of Civil Appeals was that the answer to the second question was contrary to the evidence, and there was no assignment complaining of an excessive verdict or judgment as such. But it is likewise true that the substance of the assignment so sustained was the excessiveness of the judgment. . . .

"Prior to the passage of the remittitur statute, the rule was established in this state that, where the law afforded no criterion by which to determine damages, the damages being uncertain in their nature, and the amount thereof left to the sense of right and justice of the jury, the appellate courts could declare the verdict and judgment excessive, and thereupon reverse and remand the cause for a new trial. This was the limit of their authority. They could not substitute their own finding as to damages, and thereby effect a reform in the judgment. The remittitur statute was enacted to enlarge the power of these courts, with a view to a final adjudication on appeal where the only error was excessive judgment; . .

". . . In the present case, the complaint being that the value of the property after construction and operation was less than justified by the evidence, it was necessary for the Court of Civil Appeals to first determine what value would be justified under the evidence, if it had been found by the jury. The court concluded that the jury could have found from the evidence such value to be $1,500. Having assessed it at $1,450, the result was an excess in the judgment in the sum of $50, plus interest. . . . That which alone gave the Court of Civil Appeals the right in any manner to interfere with the judgment of the trial court was

its excessiveness. Through this alone defendant was injured. Of this injury it complained by indirection, assigning error to the finding rather than to its necessary effect—excessive judgment. Looking to substance rather than form, the action of the court in this case was no more a substitution of its own finding for that of the jury than in the case of excessive judgment under a general verdict. The court granted defendant the relief, and the only relief, to which it was entitled, and it is in no position to complain of the action of the court in the premises."

See also *Texas Pipe Line Co. v. Hunt,* supra; *Rector v. DeArana,* supra; *Vassar v. State,* supra; *Central Power and Light Company v. Graddy,* 318 S.W.2d 943 (Tex. Civ.App.Houston 1958, no writ); *State v. Spears,* supra, for other cases applying similar reasoning.

For the reasons stated, the judgment will be reversed and remanded unless Singley shall within ten (10) days from December 13, 1977, file with the Clerk of this Court a remittitur in the amount of $3,037.00, in which event the judgment will be reformed as indicated and affirmed.