**Don K. HANKS, d/b/a Hanks Claims Service, Appellant,**

v.

**GAB BUSINESS SERVICES, INC., Appellee.**

No. 9312.

Court of Appeals of Texas, Amarillo.

Nov. 25, 1981.

Rehearing Denied Dec. 18, 1981.

Second Rehearing Denied Jan. 26, 1982.

Carr, Evans, Fouts & Hunt, Donald M. Hunt, Lubbock, for appellant.

Jones, Trout, Flygare, Moody & Brown, John A. Flygare, Lubbock, for appellee.

Before REYNOLDS, C. J., and DODSON and BOYD, JJ.

BOYD, Justice.

This case arises from a sales contract between appellant Don K. Hanks, d/b/a Hanks Claims Service (hereinafter referred to as "Seller") and appellee GAB Business Services, Inc. (hereinafter referred to as "Buyer"). Buyer purchased the insurance adjustment business of Seller for a total consideration of $95,000.00; $28,000.00 of the consideration was payable upon closing, $33,500.00 due one year from the date of closing, and $33,500.00 payable two years from closing. The contract contained a non-competition clause providing that Seller would not compete with Buyer in any similar line of business within a radius of 150 miles from the courthouse in Lubbock, Texas, for a five-year period beginning June 1, 1977.

The pertinent facts are virtually uncontested. On May 3, 1977, Seller agreed to sell the assets of his independent insurance adjusting business to Buyer under the sales contract referred to above. The deal was closed on June 1, 1977, at which time the down payment was made and Buyer took possession of Seller's business. Seller immediately commenced employment with Buyer and one of his first duties was to contact his former clients and urge a transfer of their business to Buyer. Seller was soon transferred to Buyer's Dallas office. Soon thereafter a dispute arose and Seller resigned his position with Buyer on June 19, 1978, shortly after the payment of the $33,-500.00 second installment due on the sales contract.

Seller returned to Lubbock (his former residence) and commenced adjusting insurance claims. He contacted a number of his former clients, soliciting and obtaining their business. He continued this business until March 5, 1979, at which time he transferred it to one Tim Roberts with the agreement that, if Roberts sold the business, Seller would receive 25 percent of the sale price. Roberts was also to pay Seller for work performed by Seller prior to the transfer to Roberts as the files were closed out.

On October 11, 1978, Buyer filed suit against Seller alleging a violation of the covenant not to compete, seeking an injunction restraining such activities and requesting attorneys' fees. Seller answered with a

general denial and allegations of breaches of contract by Buyer relieving him from the non-competition agreement. On July 11, 1979, after the delinquency of the final installment, Seller filed a first amended answer and counterclaim asking for the final installment of $33,500.00, exemplary damages and attorneys' fees. On November 26, 1979, Buyer filed its first amended petition seeking damages in addition to the injunction and asking to be excused from the final installment. Seller excepted to the excuse of performance count. Trial to a jury resulted.

In response to issues submitted the jury found, *inter alia*, that Buyer had been damaged: (a) in the amount of $1,200.00 for an eight month period of time Seller competed with Buyer; and (b) in an amount of $5,850.00 for the remainder of the contract period after Seller ceased competition. Both sides then moved for judgment. Having been required by the Court to make an election, the Buyer, by amended motion for judgment, elected to be excused from payment of the final $33,500.00 installment. Judgment was then entered concluding, as a matter of law: (1) Seller had breached the contract by competing with Buyer, and (2) Buyer had made no election of remedies prior to filing its amended motion for judgment and excusing Buyer from further performance of the contract with an award of $6,000.00 attorneys' fees. Hence, this appeal by Seller. We affirm.

In his first three points of error, appellant alleges Seller's breach of the non-competition paragraph of the sales contract does not excuse the Buyer's final payment when Buyer's "continued insistence on the performance of the contract":

(1) invoked a substantive right inconsistent with the excuse remedy;

(2) elected a remedy barring the remedy of excuse from further performance under the contract; and

(3) waived any right of Buyer to be excused from the final payment.

Although Seller, as stated above, raises points of error alleging election of inconsistent substantive rights as well as an election of inconsistent remedies, he candidly states that the *Texas Supreme Court in Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980), has established a test dispositive of points one and two. In that case, after exhaustive review of the difficulties inherent in the election doctrine, this rule is promulgated:

The election doctrine, therefore, may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *Id.*

We will judge the validity of Seller's points of error one and two by this four-pronged test.

It is true that at the time Buyer filed suit it knew that Seller had breached the contract by engaging in competitive practices. It also knew, however, that it had not paid the $33,500.00 final installment. Further, the relief originally sought by Buyer would, *if carried to judgment*, have been a successful exercise of an informed choice between two totally inconsistent remedies. In such event, to then excuse Buyer's payment of the final installment would have resulted in manifest injustice. However, we cannot agree that the mere filing of the suit was sufficient to meet the *Bocanegra* test. We note, in passing, that it has been said the doctrine of election of remedies is not a favorite of equity and its scope should not be extended. *Custom Leasing, Inc. v. Texas Bank & Tr. Co. of Dallas*, 491 S.W.2d 869, 871 (Tex.1973).

No temporary injunction was requested and no action was taken prior to judgment which would have interfered with Seller's activity. The cessation and sale of Seller's new insurance adjustment business was admittedly voluntary on his part.

It is true that after filing suit Buyer continued to operate the business purchased by Seller and continued to use the personal property involved. However, these acts commenced with the closing of the deal and do not represent new affirmative actions by

Buyer after Seller's admitted breach of the contract.

Seller cites *Bd. of Regents, U. of Tex. v. S & G Const. Co.*, 529 S.W.2d 90 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.), as authority for the proposition that upon breach of a contract, the injured party must choose either to continue or cease performance; any indication of intent to continue deprives the injured party of excuse for ceasing performance. The court said:

> It is a fundamental proposition of contract law that when one party breaches its contract, the other party is put to an election of continuing or ceasing performance, any action indicating an intention to continue will operate as a conclusive choice, not depriving the injured party of his cause of action for the breach which has already taken place, depriving him only of any excuse for ceasing performance on his own part. *Id.* at 97, *citing Western Irr. Co. v. Reeves County Land Co.*, 233 S.W.2d 599 (Tex.Civ.App.—El Paso 1950, no writ).

In *S & G Const. Co.*, the non-breaching party was a contractor engaged to build various units at the University of Texas at Austin. Immediately after work began, it was discovered that inaccurate site plans had been furnished the contractor. The contractor continued however, and completed construction. This case is distinguishable because continuation of construction is a clear, affirmative indication of intent to perform by the contractor. Here, Buyer took no new affirmative action under the contract after breach of the non-competition covenant by Seller.

■ We do not believe the mere filing of this legal action and continuation of possession constituted "action indicating an intention to continue" which would "operate as a conclusive choice" within the purview of the above statement of the law. Nor do we find there was thereby created a "manifest injustice" to Seller within the scope of *Bocanegra*. Having made no election of remedies or rights prior to trial so inconsistent as to constitute manifest injustice, Buyer clearly had the right to plead alternative and inconsistent theories of recovery. Tex.R.Civ.P. 48; *Deal v. Madison*, 576 S.W.2d 409 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.). The procedure of the trial court in submitting all ultimate issues of fact raised by the pleadings and evidence, and requiring of Buyer an election prior to judgment of the theory on which he would rely, was clearly proper. *Reynolds Brothers, Incorporated v. Dodson*, 380 S.W.2d 678, 682 (Tex.Civ.App.—Corpus Christi 1964, no writ).

■ In point of error three Seller invokes the legal principle of waiver in an effort to bar the excuse of performance remedy. He cites the definition of waiver cited and approved by our Supreme Court in *Ford v. State Farm Mut. Auto. Ins. Co.*, 550 S.W.2d 663, 666 (Tex.1977). It is as follows:

> Waiver has been frequently defined as an intentional relinquishment of a known right or *intentional conduct inconsistent with claiming it. Id., citing Massachusetts Bonding and Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex.1967).

Seller argues that upon discovery of the non-competition breach, Buyer should have attempted to return "those assets for which it had not paid" if it wished to be excused from further performance. When it did not do this, but instead filed suit asking for injunction to restrain such violation, its action constituted (under this argument) intentional conduct demanding performance under the contract inconsistent with any excuse of performance. We do not agree. The mere filing of a suit asking for relief without any *positive affirmative action taken thereunder, i.e.*, obtaining a temporary injunction, etc., does not amount to the "intentional inconsistent conduct" necessary to invoke the waiver doctrine. Appellant's points of error one through three are overruled.

■ In Seller's point four he avers error by the trial court in not rendering judgment for the $33,500.00 installment plus attorneys' fees with an offset for damages found. Again, we do not agree. In our discussion of Seller's points one through three, we found that the trial court was

correct in concluding that the Buyer had made no election of inconsistent remedies prior to judgment. We also note the general rule that "reciprocal promises in a contract are presumed, in the absence of an intention to the contrary, to be mutually dependent rather than independent and that breach of one will excuse performance of the other." *Morgan v. Singley*, 560 S.W.2d 746, 749 (Tex.Civ.App.—Texarkana 1977, no writ). Examination of the contract in question reveals no intent that any part of the contract should be independent from any other; indeed, it compels a conclusion that all parts of the contract were intended to be part of an integrated whole. Seller's admitted breach of the contract excused the performance of the contract by Buyer. *Id.* Therefore, Seller was not entitled to the judgment sought. Seller's point of error four is overruled.

Because it is more germane to this discussion, we move to consideration of Seller's point of error six. He alleges under this point that the contract was divisible and that the trial court erred in excusing any payment except the unpaid part attributable to the non-competition covenant. He argues that, the contract being divisible as a matter of law, the judgment should be reversed and rendered allowing Seller recovery for the final payment, interest and attorneys' fees less the unpaid amount attributable to the non-competition covenant.

We agree that the question of divisibility of contracts is usually a question of law. *Sisk v. Parker*, 469 S.W.2d 727, 732 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.). The contract under consideration is not ambiguous. The question must be determined by ascertaining the intent of the parties as expressed in the language used in the instrument itself. *Reconstruction Finance Corporation v. Gossett*, 130 Tex. 535, 111 S.W.2d 1066, 1074 (1938). Seller cites *Morris v. Jones*, 403 S.W.2d 855, 857 (Tex. Civ.App.—Beaumont 1966, writ ref'd n. r. e.), for the proposition that where a separate price is paid for specific contract items the contract is ordinarily divisible. However, we note in that case the approving quotation of the statement from 2 Elliott on Contracts, sec. 1545, as follows:

A divisible contract is one which from its nature and purposes is susceptible of division and apportionment, and has two or more parts in respect to matters and things embraced by it, and not necessarily dependent on each other and the parties do not intend that they shall be . . . Whether or not the contract is entire or divisible depends on the intention of the parties. The intention is to be ascertained from the language used, the subject matter of the contract, and from a consideration of all the circumstances. *Morris*, 403 S.W.2d at 858.

The contract under examination, as pointed out by Seller in his brief, expressly covered four specific assets: (1) accounts receivable; (2) 95 items of personal property; (3) the business and its goodwill; and (4) the covenant not to compete.

It is readily apparent from the language used that the subject matter of the contract, *i.e.*, all of the component parts of the business, was obviously intended by both parties to be sold and purchased as a composite deal. The covenant not to compete was obviously part of the deal as a whole and dependent thereon. The fact that a portion of the total consideration is allotted to the covenant not to compete is not alone sufficient to make the contract divisible as to that portion. Seller's point of error six is overruled.

Although no point of error is specifically made by Seller, he did complain in oral argument that the award of attorneys' fees was inconsistent with the relief granted by the trial court. When the counterclaim was filed by Seller which, of course, asked for performance under the contract, Buyer was obligated to defend. It prevailed and the contract provides that a prevailing party, in disputes under the contract, was entitled to recover attorneys' fees. The amount of the attorneys' fees was, of course, stipulated.

Seller's point of error five alleges there exists no evidence supporting the finding of the jury relating to Buyer's future dam-

ages. With the disposition we have made of his points of error one through four and point six, point five is not reached and we do not discuss it.

The judgment of the trial court is affirmed.

## MOTION FOR REHEARING

In his motion for rehearing, Seller reasserts his points of error and specifically contends that our opinion fails to fairly and fully address his arguments. In particular, he urges that we did not consider his argument that the seeking and securing of a judgment for attorneys' fees was such an invocation of inconsistent substantive right, election of remedy and such a waiver of inconsistent remedy that Buyer had made a conclusive choice to treat the contract in question as continuing.

To the contrary, in our consideration of appellant's detailed analysis of the theories supporting his position, we gave full attention to that portion of the argument concerning the pleading and award of attorneys' fees. We concluded then and, after reconsideration of all points as requested by him, still conclude the arguments are unavailing for the reasons set out in our opinion.

The motion for rehearing is overruled.