The BOARD OF REGENTS OF the UNIVERSITY OF TEXAS, Appellant,

v.

S & G CONSTRUCTION COMPANY, Appellee.

No. 12312.

Court of Civil Appeals of Texas, Austin.

Oct. 8, 1975.

Rehearing Denied Nov. 5, 1975.

---

John L. Hill, Atty. Gen., John Reeves, Asst. Atty. Gen., Austin, for appellant.

Douglass D. Hearne, Stayton, Maloney, Hearne & Babb, Austin, for appellee.

PHILLIPS, Chief Justice.

This case involves a contract entered into between the Board of Regents of the University of Texas, the appellants here, and the S & G Construction Company, the appellee, to construct married students' apartments. The apartments were completed to the satisfaction of both parties to the contract; however, due to errors in the topographic survey furnished by the Regents as required by the contract, considerable additional work by the builder was necessary to complete the project. Both parties agree that extra compensation is due the builder, but they disagree on the measure, and consequently on the amount of the additional compensation. Appellant contends that both parties performed in accordance with the provisions of the contract and that any additional compensation that may be due to appellee must be calculated within the provisions of the contract relating to extra work performed. Appellee, however, maintains that appellant breached the contract and seeks damages resulting from such breach.

Upon trial in the 126th District Court of Travis County, a jury answered special issues to the effect (1) that the defendant Regents failed to provide correct plans and specifications and additional instructions and detailed drawings as were necessary to carry out the work called for in the contract, (2) that but for this failure plaintiff builder could have performed the work called for within the time and price stated in the contract, (3) that because of defendant's failure plaintiff builder was required to do additional work, and (4) that adequate

compensation to appellee for the additional work required by defendant Regent's failure to provide the plans was $837,674.90.[1]

Based on these findings, the trial court awarded plaintiff builder $837,674.90 in damages, plus interest thereon from August 16, 1973 until paid, and $12,000 of the contract price withheld by the Regents as liquidated damages for the late completion of the project. We affirm this judgment.

■ Appellant is before us on ten points of error, the first two, briefed together, being the error of the court in admitting evidence of appellee's costs of construction of the entire project because this evidence violates the parol evidence rule; and also, because the judgment allows the appellee to be compensated on a basis which is different from that provided for in the written contract between the parties. We overrule these points.

Appellant's theory of the case, for which, it maintains, it should have been awarded judgment as a matter of law, is that appellee is only entitled to the compensation provided in the written contract plus compensation for additional work performed pursuant to approved written change-orders as specified in the contract itself. Appellant maintains that pursuant to this theory it made no effort to refute appellee's proof of costs because such evidence was totally inadmissible.

Appellee, on the other hand, contends that appellant under the contract, was responsible for providing accurate and reliable plans, drawings and specifications, that appellant breached the contract by failing to provide these documents, and that the real issue in the case is whether or not appellant can escape liability for damages incurred by appellee in constructing the

---

1. In reply to two other special issues not pertinent to the theory by which we have decided this case, the jury found (1) that the defendant, through its construction supervisor, had waived the contractual requirement for prior written approval of additional work, and (2) that the plaintiff and defendant had incorporated into the contract a preconstruction conference letter authorizing immediate changes by the contractor without a work-change order "if the circumstances make this procedure desirable."

project without accurate and reliable written plans.

It is undisputed that the parties entered into the contract in question and that appellee agreed to do the work specified in the General Conditions and Supplemental General Conditions of the contract. This included maps, plats, drawings, site plans and all revisions and changes made pursuant to the contract documents. It is likewise admitted that appellee completed the project and that appellant paid appellee the amount stated in the written contract plus amounts agreed upon for additional work performed pursuant to approved written change-orders. As stated above, appellant admits that there is, in all likelihood, additional compensation due appellee, however, it insists that compensation must be calculated under the terms of the contract. These provisions, set out in the contract under the General Conditions, are as follows:

"17. *Changes in Work*

No changes in the work covered by the approved Contract Documents shall be made without having prior written approval of the Owner. Charges or credits for the work covered by the approved change shall be determined by one or more, or a combination of the following methods . . .

\* \* \* \* \* \*

"18. *Extras*

Without invalidating the contract, the Owner may order extra work or make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly, and the consent of the Surety being first obtained where necessary or desirable. All the work of the kind bid upon shall be paid for at the price stipulated in the proposal, and no claims for any extra work or materials shall be allowed unless the work is ordered in writing by the Owner or its Architect/Engineer, acting officially for the Owner, and the price is stated in such order.

\* \* \* \* \* \*

"22. *Claims for Extra Costs*

*No claim for extra work or cost shall be allowed unless the same was done in pursuance of a written order* of the Architect/Engineer approved by the Owner, as aforesaid, and the claim presented with the first estimate after the changed or extra work is done. When work is performed under the terms of subparagraph 17(c) of the General Conditions, the Contractor shall furnish satisfactory bills, payrolls and vouchers covering all items of cost and when requested by the Owner, give the Owner access to accounts relating thereto." (Emphasis added)

It is also admitted that a serious error existed in the original topographical site survey which required the building sites to be moved thus requiring the appellee-contractor to do additional work. It is appellant's position that upon discovery of the error a meeting was held between the owner, the architect, and the contractor at which time it was decided not to shut down the project but to complete it as scheduled using the original plans and specifications, where appropriate, and making such revisions and additions as were necessary to carry out the work under the contract. Appellant contends that appellee had the right to withdraw his bid and refuse to perform the contract when the error was discovered.[2] Instead, appellee chose not to withdraw his bid and refuse to perform under the contract but rather chose to perform the contract and to be paid the sum provided for in the contract documents, and proceeded to complete the project in accordance with the plans and specifications as subsequently revised.

---

**2.** *Taylor & Son, Inc. v. Arlington Ind. School District*, 160 Tex. 617, 335 S.W.2d 371 (Tex. 1960), *State Highway Comm. v. Canion*, 250 S.W.2d 439 (Tex.Civ.App.1952, writ ref. n. r. e.), *Jordan v. City of Beaumont*, 337 S.W.2d 115 (Tex.Civ.App.1960, writ ref. n. r. e.).

We cannot agree with appellant's position on these points.

The evidence is undisputed that appellee was never furnished the additional plans for which the contract provided:

"The Contractor will be furnished additional instructions and detail drawings as necessary to carry out the work included in the contract. *The additional drawings and instructions thus supplied to the Contractor will coordinate with the Contract Documents and will be so prepared that they can be reasonably interpreted as part thereof.* The Contractor shall carry out the work in accordance with the additional detailed drawings and instructions." (Emphasis added)

At the close of evidence the case was submitted to the jury which found that the appellant failed to provide correct plans and specifications and additional instructions and detailed drawings as were necessary to carry out the work called for in the contract; and further found, that because of appellant's failure to provide correct plans and specifications and additional instructions and detailed drawings as were necessary to carry out the work called for in the contract, appellee was required to do the additional work occasioned by the breach.

In submitting these issues to the jury, the trial court implicitly found that appellant was bound by the contract to furnish such written plans as were necessary to carry out the work called for under the contract. The jury's answers conclusively established that appellant breached this duty and that as a result of such breach, appellee was damaged.

As we stated above, the evidence supporting the jury's findings is, for all practical purposes, undisputed. The contract called for the construction of additional married student housing for the University of Texas. This project, located at the site of the old Confederate Home on West Sixth Street in Austin, consisted of constructing eighteen new multistoried apartment units, the remodeling of two others, along with the construction of the necessary streets, parking lots, curbing, drainage facilities, sidewalks, utilities, landscaping and recreational and laundry facilities. The topography of the site is extremely uneven with abrupt elevation variances throughout.

The contract called for the project to be built in accordance with certain plans and specifications prepared by an independent architectural firm chosen exclusively by appellant. Included among the plans were fifteen pages of site plans which detailed the overall layout, elevation, and relationship of the various improvements to one another and to given existing physical monuments. By use of these plans and specifications, appellee had estimated the cost of the job and had submitted its bid based on that estimate.

Immediately after work was begun, it was discovered that these site plans were so totally inaccurate that it was physically impossible for appellee to utilize them in constructing the project. The testimony discloses that the surveyor whose job was to locate the various improvements on the ground by use of these site plans had to move every improvement horizontally from two to fifteen feet and vertically from three to five feet.

Appellee's president, the architects and appellant's inspector, all testified that it would have been a physical impossibility for appellee to have constructed the project utilizing the plans and specifications in the contract and upon which appellee had based its bid.

When the errors were discovered, the project architect recommended that the job be shut down until new plans based upon a correct survey could be prepared. Nevertheless, appellant's chief of construction decided that the project would be continued and that the appellant would fulfill its contractual obligation to provide accurate and reliable plans by issuing piecemeal, partial plans. This decision to proceed without corrected plans was unilaterally made by appellant's chief of construction without any

conference whatsoever between the other members of his staff or the contractor or the architect. At this time appellee's president advised the project architect that if the contractor were not given a correct, overall, site plan showing the relationship of the various improvements to one another, the piecemeal approach described above was going to cause serious problems. Although appellee's president repeated this request on numerous occasions through the project, the appellee was never furnished the correct overall site plan requested.

Because of the absence of this critical, corrected site plan, the appellee was forced to construct the project as it was being designed, redesigned, altered, added to, and deleted from in the field on a daily basis without the use of correct and adequate written plans by which to proceed.

Every improvement, including buildings, streets, parking lots, and utilities, was located and relocated at least three times and as many as five times from the location shown on the original plan to its final location. The appellee was not only required to make these many modifications, alterations, additions and deletions directed by the appellant's representatives, but was expected to make the majority of such changes without the aid of written supplemental plans. The appellant's own project architect acknowledged the inadequacy of the few supplemental plans furnished appellee.

While the contract contained a change-order procedure whereby the work to be done, time for completion, and compensation to be paid could be modified by written proposals and written orders, since the whole project had to be redesigned in the field as the work was being done to compensate for the major errors in the original plans, such system proved totally inadequate to accomplish its intended purpose. For appellant to insist that appellee was bound to perform within the change-order provision of the contract completely ignores that vital part of the contract requiring that it furnish the plans and specifications necessary for a satisfactory completion of the project. It was the duty of the Board of Regents to provide the necessary plans and specifications under the terms of the contract. Its effort here to raise the spectre of the change-order provision begs the question. Its breach set in motion the resulting tide of damages which the change-orders could in no way have fully stemmed. The Board cannot now escape the results of its failure by such diversion. Consequently, we hold that such a failure to provide "correct plans and specifications and additional instructions and detail drawings as were necessary to carry out the work called for in the contract . . . ." was a breach of the contract resulting in the damage to appellee found by the jury.

Because of the absence of detailed written plans from which to estimate in advance the probable costs of implementing the numerous required changes, appellant's representatives regularly instructed appellee to do the work, keep track of its costs, and consistently promised that the compensation would be computed after the project was completed. Appellee complied with these requests trusting throughout that a fair compensation would be paid at the conclusion of the project. Operating on this belief, the appellee remained on the job and finally completed it in the summer of 1973.

Appellee's president testified that in deciding to remain on the job after the erroneous condition of the original plans was discovered, he relied upon both the contractual duty of appellant to produce the revised written plans as well as the promises made by appellant's representatives at the time to furnish such plans. Both parties testified that they understood that the contract terms imposed such a responsibility on appellant. Consequently, the contractor is now entitled to recover his additional costs incurred as a result of delay and having to perform additional work or incur added difficulty because of appellant's breach. *El Paso & S. W. R. Co. v. Eichel & Weikel*, 130 S.W. 922 (Tex.Civ.App.1910, writ ref'd);

Ann. 70 L.Ed. 440 (1927); 91 L.Ed. 48 (1947).

■ Moreover, appellee's decision to stay on the job despite appellant's breach of contract, was in no way a waiver or basis for an estoppel to assert appellee's claim to damages for appellant's breach. It is a fundamental proposition of contract law that when one party breaches its contract, the other party is put to an election of continuing or ceasing performance, any action indicating an intention to continue will operate as a conclusive choice, not depriving the injured party of his cause of action for the breach which has already taken place, depriving him only of any excuse for ceasing performance on his own part. *Western Irr. Co. v. Reeves County Land Co.*, 233 S.W.2d 599 (Tex.Civ.App.1950, no writ). Here the court held that this rule was applicable in building and construction contracts.

■ It is well established that when the State of Texas makes a contract, it is as much bound thereby as a private citizen would be bound by a like contract.[3]

■ We also hold that the trial court's acceptance of evidence of appellee's cost of construction did not violate the parol evidence rule. The parol evidence rule does not exclude evidence of events transpiring subsequent to the execution of a written contract. "The Parol Evidence Rule is the rule which, upon the establishment of the existence of a writing intended as a completed memorial of a legal transaction, denies efficacy to any prior or contemporaneous expressions of the parties relating to the same subject-matter as that to which the written memorial relates." 2 McCormick & Ray, *Texas Law of Evidence*, § 1601 (1956). "The underlying theory of the Parol Evidence Rule is that the reduction of a transaction to a final written form supersedes prior and contemporaneous outside expressions of the parties. But there is nothing in the Parol Evidence Rule which prevents the written transactions from being later modified by the parties by a *new* agreement, though oral." 2 McCormick & Ray, *Texas Law of Evidence*, § 1671 (1956). Moreover, the rule does not apply to parol evidence intended to aid the Court in the interpretation of a written contract. 2 McCormick & Ray, *Texas Law of Evidence*, § 1681 (1956). *Board of Regents of the State Teachers Colleges of Texas v. Goetz*, 453 S.W.2d 290 (Tex.1970), cited by appellant for the proposition that the parol evidence rules bar the admission in evidence of appellee's construction costs, is not in point here. In that case the Court correctly excluded parol evidence and evidence prior to the execution of the written contract.

Thus, we overrule appellant's contention that the amount of recovery due appellee here is limited to the amount stipulated in the contract. Appellant's thesis fails to recognize the distinction between a suit to collect the monetary consideration recited in the contract and a suit for consequential damages suffered by the complaining party as a result of the other party's breach of a contractual obligation other than the duty to pay the stipulated monetary consideration. Cases cited by appellant in this regard are not in point as they do not involve a breach of the contract on the part of the governing body.[4]

3. 52 Tex.Jur.2d § 48, p. 759; *Ft. Worth Nat'l. Bank v. State*, 158 S.W.2d 885 (Tex. Civ.App.1942, writ ref. w. o. m.); *State v. Elliott*, 212 S.W. 695 (Tex.Civ.App.1919, writ ref.); *Stacy v. Bridge City Independent School Dist.*, 357 S.W.2d 618 (Tex.Civ.App. 1962, no writ).

4. *Board of Regents v. Goetz*, 453 S.W.2d 290 (Tex.1970); *State v. Ragland Clinic-Hospital*, 138 Tex. 393, 159 S.W.2d 105 (1942); *Fort Worth Cavalry Club v. Sheppard*, 125 Tex. 339, 83 S.W.2d 660 (1935); *State v. City of Austin*, 160 Tex. 348, 331 S.W.2d 737 (1960); *Empire Gas & Fuel Co. v. State*, 121 Tex. 138, 47 S.W.2d 265 (1932); *State v. Martin Bros.*, 138 Tex. 505, 160 S.W.2d 58 (1942); *City of Austin v. Cotten*, 509 S.W.2d 554 (Tex.1974); *City of Houston v. L. J. Fuller, Inc.*, 311 S.W.2d 285 (Tex.Civ.App. 1958, no writ); *State v. Steck Co.*, 236 S.W.2d 866 (Tex.Civ.App.1951, writ ref.); *State v. Perlstein*, 79 S.W.2d 143 (Tex.Civ. App.1934, writ dism.); *Nichols v. State*, 11

■ The courts of this state have always recognized the general rule that the measure of damages for breach of contract is just compensation for the damages actually sustained by plaintiff as a result of the defendant's action. *Steward v. Basey*, 150 Tex. 666, 245 S.W.2d 484 (Tex.1952). In implementing this rule, we affirm the measure of damages awarded by the trial court in this case. That measure, in our judgment, will best compensate appellee for the injury suffered and replace it, as nearly as possible, in the position it would have occupied had appellant not breached its contract. *Cretien v. Kincaid*, 84 S.W.2d 1094 (Tex.Civ.App.1935), affirmed at 130 Tex. 513, 111 S.W.2d 1098; *Kincaid v. Cretien* (Tex.Com.App.1938, opinion adopted).

■ We also overrule appellant's points three and four to the effect that the judgment before us constitutes extra compensation for services performed pursuant to a valid written contract in violation of Section 44, Article III, Constitution of Texas; and also, that the judgment constitutes a gift or donation in violation of Section 51, Article III, of the Texas Constitution.

■ The short answer to these arguments is that the limitations stated in the constitutional provisions referred to in the abovementioned points apply only when the extra compensation "shall not have been provided for by pre-existing law . . ." [5] Thus the legislature is precluded from granting such compensation unless the claim is provided for by pre-existing law. The courts have consistently held that the term "pre-existing law" as used in Section 44 includes the common law. *Austin National Bank v. Sheppard*, 123 Tex. 272, 71 S.W.2d 242 (Tex.Comm'n App.1934, opinion adopted).

■ In its fifth and sixth points, briefed together, appellant assigns error to the court in changing its instructions to the jury regarding the definition used in special issues 1, 2, 3 and 6; and also, erred in overruling appellant's motion for mistrial because the change of instructions by the court after oral argument based on such instructions had begun was a violation of Rule 278, Texas Rules of Civil Procedure. We overrule these points.

After opening argument to the jury was completed and rebuttal argument was in progress, the trial court amended its written charge to the jury by changing the definition of the phrase "Correct plans and specifications and additional instructions and detailed drawings" as used in special issues numbers 1, 2, 3 and 6, by adding to the original instructions the phrase "and the term additional instructions means written instructions."

We hold that the court was correct in amending the charge because appellant's counsel, in his jury argument, had suggested an erroneous legal construction of the contract. It then became necessary for the trial court to amend its charge (which before amendment would have permitted the objectionable argument) in order to clarify the point. This point goes to the crux of the lawsuit.

Appellee's contention, as sustained by the trial court, is that paragraph 3 of the General Provisions of the contract before us, created a duty on the part of appellant to supply additional written instructions. The jury's answer to special issue number 1 finds that appellant breached this duty.

■ Appellant does not contest the fact that additional instructions were necessary to carry out the work. Rather, appellant contends that the contract only required appellant to supply oral instructions along with some written instructions provided

---

Tex.Civ.App. 327, 32 S.W. 452 (1895, writ ref. n. r. e.); *State v. F & C Engineering Co.*, 438 S.W.2d 647 (Tex.Civ.App.1969, writ ref. n. r. e.); For authorities in other jurisdictions, see: *State Highway Dept. v. Wright Contracting Co.*, 107 Ga.App. 758, 131 S.E.2d 808 (1963), 1 A.L.R.3d 1260 (1965), and annotations pp. 1273–1322.

5. Tex.Const. Art. III, § 44.

along with certain change-orders admitted into evidence. Thus appellant does not ground its contention upon paragraph 3 of the contract but argues that paragraph 11 of the General Conditions and paragraph 7 of the Supplemental General Conditions supply the meaning of the term "additional instructions" as used in paragraph 3. The linchpin of paragraph 3 is the second sentence which reads: "The additional drawings and instructions thus supplied to the contractor will coordinate with the Contract Documents and will be so prepared that they can be reasonably interpreted as a part thereof." This sentence is susceptible to only one interpretation: the additional instructions were to be prepared by appellant in such a manner that they would become a part of the Contract Documents—that is, a part of the original contract. The entire text of paragraph 3 plainly reveals that the parties contemplated written additions to the Contract Documents, and not reliance on paragraph 11 of the General Conditions and paragraph 7 of the Supplemental General Conditions as contended by appellant. These latter paragraphs provide for directives relative to the execution of the work and could be given independently from the provisions of paragraph 3. These day-to-day directions to be given in the field could in no way be "interpreted as part of the Contract Documents." The trial court correctly construed the contract and in amending the charge presented the jury with the only question that was within its province to decide. *Crown Western Investments, Inc. v. Mercantile National Bank*, 504 S.W.2d 785 (Tex.Civ.App.1974, no writ); *Parks v. Frankfurt*, 476 S.W.2d 717 (Tex. Civ.App.1972, writ ref. n. r. e.). In reviewing the construction placed upon this contract by the trial court, we must bear in mind any doubt as to the meaning of the contract is to be resolved against the party who prepared the document. *W. W. Harris v. Phillips Pipe Line Co.*, 517 S.W.2d 361 (Tex.Civ.App.1975, writ ref. n. r. e.); *Crown Western Investments v. Mercantile National Bank*, 504 S.W.2d 785 (Tex.Civ.App.1974, n. w. h.).

■ We also hold that there was no violation of Rule 275, Texas Rules of Civil Procedure so as to constitute reversible error.[6] It is the policy of the law that the jury shall be correctly instructed. To sustain appellant's position would be to render the court helpless to correct an error where it is aware that it has given an erroneous charge, although not to correct it would necessitate the granting of a new trial and a retrial of the whole case, or the reversal of the judgment on appeal. *Cheek v. W. H. Nicholson & Co.*, 146 S.W. 594 (Tex.Civ.App. 1912, writ ref.); *Texas State Highway Department v. Reeves*, 161 S.W.2d 357 (Tex. Civ.App.1942, writ ref.).

We will not consider appellant's points of error seven and eight further as they have already been dealt with in this opinion.[7]

■ Appellant's ninth point, which we overrule, is the error of the court in entering judgment which allowed appellee interest.

Appellant first contends that the State may not be liable for interest on claims against it unless there is an agreement made pursuant to statutory authority. In *Franklin Bros. v. Standard Mfg. Co.*, 78 S.W.2d 294 (Tex.Civ.App.1935), writ dism'd, 131 Tex. 63, 112 S.W.2d 1035 (1938), this Court considered the question and held that

6. Rule 275, Texas Rules of Civil Procedure is as follows: "Before the argument is begun, the judge shall read to the jury, in the precise words, in which they were written, his charge and all requested instructions, special issues, definitions, and explanatory instructions which he may give."

7. These points are as follows: "Seventh point of error: The trial court erred in denying appellant's motion to withdraw the case from the jury and in denying appellant's Motion for Judgment Non Obstante Veredicto for the reason that the ultimate issue in this case is a question of law and not one of disputed fact. Eighth point of error: The trial court erred in entering judgment based on the verdict of the jury for the reason that there is no admissible evidence to support such a jury verdict."

Tex.Rev.Civ.Stat.Ann. art. 5072 (now art. 5069–1.05), authorized the recovery of interest on a judgment against the State. The statute upon which this Court relied provided that "[a]ll judgments of the courts of this State shall bear interest at the rate of six percent per annum from and after the date of the judgment . . ."

Appellant then contends that the award of pre-judgment interest was erroneous and, therefore, the entire award of interest should be disallowed. As early as 1897 in *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897) the Supreme Court rejected the contention urged by appellant that pre-judgment interest may not be recovered where the damages are unliquidated. In *Davidson v. Clearman*, 391 S.W.2d 48 (Tex. 1965) the Supreme Court restated this position holding that where the measure of damages is fixed by conditions existing at the time the injury occurs, interest may be recovered from that date. In *Clearman* the Court authorized recovery of interest by a contractor from the date on which the owners took possession of a building; in the present case, the judgment awards interest from the date the project was completed.

We also overrule appellant's tenth point which asserts the error of the trial court in entering judgment allowing appellee to recover an additional sum in excess of the verdict of the jury.

In answer to special issue no. 6 the jury awarded appellee the sum of $837,674.90 as compensation "for the additional work, if any, not otherwise compensated." The judgment, in addition to awarding appellee the amount of the jury verdict awarded appellee $12,000 representing the amount which appellant had withheld from appellee as liquidated damages, together with interest thereon, because of the late completion of the buildings. Appellant maintains that this amount was included in the amount awarded by the jury in answer to special issue no. 6 described above. Appellant also contends that there is no testimony that appellant did not have the right to withhold this sum.

In special issue no. 2 set out above, the jury found that but for appellant's failure to provide correct plans and specifications and additional instructions and detailed drawings as were necessary to carry out the work under the contract, the appellee could have performed the work called for under the contract within the time and for the price stated in the contract. Hence, appellee's failure to timely complete the building was caused by "acts of the owner" which expressly relieves appellee from liability for liquidated damages.[8]

We agree with the trial court that the cause of the delay in completion was the breach of the owner, and that the $12,000 withheld by appellant was due to appellee in payment of the original contract price, and was not included in the $837,674.90 awarded appellee as damages.

The judgment of the trial court is in all things affirmed.

8. Paragraph 19 of the contract's General Conditions entitled "Time for Completion and Liquidated Damages" provides in part: "If the Contractor shall neglect, fail or refuse to complete the work within the time herein specified, or any proper extension thereof granted by the Owner, then the Contractor does hereby agree, as a part consideration for the awarding of this contract, to pay to the Owner the amount specified in the contract, not as a penalty but as liquidated damages for such breach of contract as hereinafter set forth, for each and every calendar day that the Contractor shall be in default after the time stipulated in the contract for completing the work . . .

Provided further, that the Contractor shall not be charged with liquidated damages or any excess cost when the delay in completion of the work is due . . .

\* \* \* \* \* \*

"(b) To unforeseeable cause beyond the control and without the fault or negligence of the Contractor, including, but not restricted to, acts of God, or of the public enemy, *acts of the Owner*, acts of another Contractor in the performance of a contract with the Owner, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and severe weather . . ." (Emphasis added)