BOARD OF REGENTS OF NORTH
TEXAS STATE UNIVERSITY, et
al., Appellants,

v.

DENTON CONSTRUCTION
COMPANY, Appellee.

No. 2–82–159–CV.

Court of Appeals of Texas,
Fort Worth.

May 19, 1983.

Rehearing Denied June 16, 1983.

Mark White, Atty. Gen. of Texas and Mahon B. Garry, Jr., Asst. Atty. Gen., Austin, for appellants.

Vial, Hamilton, Koch, Tubb, Knox & Stradley and James H. Baumgartner, Jr., Dallas, for appellees.

Before HUGHES, JORDAN and BURDOCK, JJ.

## OPINION

JORDAN, Justice.

The appeal is from an adverse judgment in the total amount of $417,757.69 rendered by the trial court on a jury verdict in a suit involving two construction contracts between the parties hereto with respect to two buildings at North Texas State University in Denton, Texas.

Appellants advance thirty points of error to support their contentions that the judgment rendered against them was erroneous and must be reversed. We agree with some of appellants' points of error and reverse and remand the cause for a new trial.

There are two different construction contracts between Denton Construction Company, as general contractor, and North Texas State University and the State of Texas, as owners, involved in this suit. The first contract, entered into in November, 1974, provided for the renovation and alteration by appellee, hereafter referred to as Contractor, of two dormitory buildings at North Texas State University (The University). These two dormitory buildings, by the terms of the first contract, were to be made into Music Practice Buildings. In June of 1976, another contract was entered into between these parties for the construction of a new Visitors Center Building.

After work on the two Music Practice Buildings was commenced, appellee Contractor encountered numerous delays which resulted in the job not being finished for inspection until more than 190 days after the completion date called for in the contract. While the cause of the delays was disputed at trial, Contractor claimed that the delays were all caused by indecision and

delays by the University involving installation of different items in the construction of the two Music Practice Buildings. Contractor contended that there was an aggregate of 902 days delay, as set out in its exhibit at trial number 49, exclusive of delays caused by weather or labor strikes.

The jury agreed with appellee's contentions and answered all of the special issues submitted in favor of appellee.

Specifically, the delays were encountered because of unforeseen problems confronting Contractor with respect to the replacement and reworking of certain "relieving angles" which were not properly secured to the building and which fell off when bricks were removed. Additional reasons for delay were, according to Contractor: an unusual floor texture on the bathroom floors which required a substantial amount of extra work; uncertainty on the part of the University in deciding what material it wanted on the music practice room walls; uncertainty on the part of the University as to the texture and material wanted for its sidewalk system; a change in plans by the University in some of the hardware originally specified for the Music Practice Buildings; a delay in the delivery and installation of wall carpet because the University ultimately required a repair of the existing walls to receive the new carpet as wall covering; delay with regard to the bathroom floors because, according to Contractor, the University delayed in issuing a change order.

Appellee Contractor sought and recovered damages for all of these items allegedly causing delay in completion of the contract.

After the work on the Music Practice Buildings was completed, appellants withheld $8,000.00 from Contractor because they claimed certain air conditioning screens did not meet the contract specifications, and withheld $10,000.00 because certain pitch pans did not meet contract requirements.

With respect to the contract for the construction of the new Visitors Center Building, work was commenced thereon in July, 1976, and the Contractor again encountered delays, with the result that the work on this new building was not completed for final inspection until 59 days after the date called for in the contract. Again, the reasons for the delays were disputed, but for our purposes, they were attributable to delay in the delivery of brick and masonry products ordered on a "closed specification", delay in the delivery of steel, and an error in the design of the driveway ramp for the building which caused a repouring of the driveway, and consequent delay.

Appellee Contractor alleged that it was delayed a total of 59 days in completing the Visitors Center project as the result of acts and omissions of appellant University, and it sought and recovered the sum of $49,-660.00 as damages for this delay.

Appellants withheld $8,360.00 as liquidated damages for appellee's failure to timely complete the construction of the Visitors Center Building. Appellant also, because of the alleged delay on the part of Contractor on all these projects, refused to permit Contractor to bid on other, later projects, which caused Contractor, in its suit, to sue for exemplary damages, in addition to its alleged actual damages.

The jury, in answering Special Issues 14, 15, 16, and 17, found that the University's actions in disqualifying Contractor as an acceptable bidder on additional construction projects were undertaken without just cause, that such actions caused Contractor additional actual damages in the amount of $33,000.00 and exemplary damages in the sum of $115,000.00. Since Contractor in its suit only pled for $82,180.00 in exemplary damages, it tendered by way of remittitur the sum of $32,820.00 which was the excess of the amount found by the jury over the amount pled.

In points of error one, two, three, ten and twelve appellants take the position that exemplary damages will not lie against the State of Texas, and that, accordingly, it was error on the part of the trial court to overrule appellants' exceptions to the pleading of exemplary damages, to submit an issue thereon, and to enter judgment in favor of

appellee for exemplary damages. We sustain these points of error.

In points of error four, five, six, seven, eight and eleven appellants contend that the State of Texas had not waived its sovereign immunity to the extent that appellee could recover each of its specific and delineated elements of damages, such as delay and consequential loss because of "relieving angles", air conditioning screens, changes in the bathroom floors and other specified damages. We overrule points of error four through eight and eleven.

Since the first twelve points of error all involve appellants' claim that the State had not waived its sovereign immunity as to the items mentioned above, those points of error will be discussed together.

After appellants refused to satisfy appellee's claim for damages caused by the delays in completing both contracts, and after appellant University prohibited Contractor from bidding on additional construction projects, appellee sought and obtained consent from the Texas Legislature to sue the University, which is an arm of the State of Texas, and the State itself. The legislative consent read in pertinent part:

WHEREAS, Denton Construction Co. alleges that on December 4, 1974, it entered into a written contract with North Texas State University for construction of a music practice building; and

WHEREAS, Denton Construction Co. alleges that on June 22, 1976, it entered into another written contract with North Texas State University for the remodeling of the campus visitors center; and

WHEREAS, Denton Construction Co. alleges that during the construction of both projects North Texas State University was responsible for repeated delays that caused each project to cost more than the amount of the original bid and change order allowances; and

WHEREAS, Denton Construction Co. alleges that North Texas State University has refused to compensate Denton Construction Co. for the costs incurred as a result of these delays; now, therefore, be it

RESOLVED by the House of Representatives of the State of Texas, the Senate concurring, That Denton Construction Co. is hereby granted permission to sue the State of Texas and North Texas State University for whatever relief to which it may be entitled as a result of either or both of these construction project disputes; ... [Emphasis added.]

We discuss appellants' points of error four, five, six, seven, eight and eleven first. Appellants would have this court apply a very narrow and strict interpretation upon the legislative consent quoted above. They argue that the permission to sue "for whatever relief to which it may be entitled as a result of ... these construction project disputes; ..." refers to and is limited to the "repeated delays" mentioned in the third "Whereas" clause in the preamble. They say that only the question of damage for delay, and not the other elements of damages such as additional costs for the various changes and different materials, are covered by the consent to sue the State.

Appellee urges, on the other hand, that to accept appellants' interpretation of the legislative consent would require the Legislature, in each grant of legislative consent to sue the State, to expressly and painstakingly prepare the charge of the court for every aspect of a dispute (presumably right down to the relieving angles, pitch pans, air conditioning screens, and bathroom floor involved here) before suit could be brought. We agree with appellee on this point and reject appellants' narrow and limited construction of the legislative consent to sue.

■ We interpret the legislative consent to sue the State in this case to mean that the Contractor was permitted to sue the University and the State of Texas for whatever claims for damages it might prove and be legally entitled to as a result of its disputes with the University over the excessive costs incurred as a result of alleged acts and omissions on the part of the University. It has long been held that legislative consents to sue are not to be given a narrow or technical construction. *See State*

*v. Hale,* 136 Tex. 29, 146 S.W.2d 731 (Tex. 1941); *Commercial Stand. F. & M. Co. v. Commissioner of Ins.,* 429 S.W.2d 930 (Tex. Civ.App.—Austin 1968, no writ). The facts of the instant case are very similar to those in *State v. Hale, supra.* In that case, the Texas Highway Department began construction of a highway by building a temporary roadbed across a creek bottom. Since this temporary roadbed was substantially higher than the adjacent land, the natural flow of flood water was impeded and large quantities of sand and other substances were deposited on the adjacent farmland, impairing its productivity. The adjacent landowner sought and received an act granting permission to sue the State Highway Commission for " 'damages resulting from the construction of [the highway] . . . and especially by reason of the construction of said Highway in such manner as to overflow and otherwise damage the lands . . . ' " The State argued that the act should be narrowly construed, with recovery being limited to damage caused by the temporary roadbed. The Texas Supreme Court, however, refused to give the consent such "narrow and technical construction", and held that the consent was "broad enough to permit plaintiffs to file suit for *any legally existing claim* . . . growing out of the construction of [the highway]. . . ." *State v. Hale, supra,* 146 S.W.2d at 735. (Emphasis added.)

It must be kept in mind that the legislative consent in this case, as appellee argues, is very broad and authorizes suit by appellee for any relief it may be entitled to as a result of these disputes. We believe that it was sufficient to encompass the suit for actual damages sought and recovered in this case.

■ However, our ruling differs with respect to the argument raised in appellant's points of error one, two, three, ten and twelve, that the State did not consent to be sued for damages for lost profits on other buildings not constructed by appellee or for exemplary damages. We do not agree with appellee's contention that the legislative permission to sue "Defendants 'for whatev-

er relief to which it [Plaintiff] may be entitled . . . ' " encompasses a claim for exemplary damages. We think the logical interpretation of that legislative consent was to grant to appellee the right to sue for all claims for *actual* damages it could show it had suffered as a result of the acts of appellants.

Moreover, we doubt that appellee's alleged claim for lost profits as a result of being prohibited from bidding on an entirely separate project, and for resulting exemplary damages, are actually a part of the dispute over the construction of the Music Practice Buildings and the Visitors Center and the delays and extra costs incurred in construction of those buildings. We see the claim for speculative lost profits and exemplary damages as separate and apart from appellee's claim for damages as a result of the delays and extra costs necessitated by appellants' actions.

■ Ordinarily, exemplary damages cannot be recovered against the State. *Duhart v. State,* 610 S.W.2d 740 (Tex.1980). This rule is based on the more general rule of sovereign immunity which can be waived only by the Legislature. We do not mean to say that never, in any instance, could exemplary damages be recovered against the State. But, we do mean to say that unless permission to sue for exemplary damages is specifically and expressly given, a claim therefore will not lie. We do not think it was given in this case.

*Duhart v. State, supra,* involved a suit under § 5 of the Worker's Compensation Act. (Tex.Rev.Civ.Stat.Ann. art. 8306, § 5 (1967)), which preserves the rights of certain survivors of an employee killed in the course of his employment to bring an action for gross negligence as a result of the death against the employer of the decedent. Duhart was an employee of the Texas Highway Department and was killed in the course and scope of his employment, allegedly as a result of the gross negligence of his supervisor. His survivors were entitled to (and presumably did) receive worker's compensation benefits as a result of his death under the provisions of Tex.Rev.Civ.

Stat.Ann. art. 6674s (1977), which provides worker's compensation benefits for Highway Department employees. At the time of Duhart's death, § 5 of the Worker's Compensation Act had been incorporated by reference into art. 6674s. The Supreme Court noted that since art. 8306, § 5 did not create a new cause of action, its incorporation into art. 6674s did not create any new cause of action either. Since no cause of action for exemplary damages had previously existed against the State, no new right was created by the inclusion of art. 8306, § 5 and suits under art. 8306, § 5 were barred until such time as the Legislature expressly waived the immunity from gross negligence suits.

■ We therefore sustain appellants' points of error one, two, three, ten and twelve, and hold that Special Issue Nos. 14, 15, 16, and 17 were improperly submitted. Appellee is denied recovery of its actual damages found in Special Issue No. 16 of $33,000.00 and exemplary damages of $115,-000.00 (reduced to $82,180.00) as found in answer to Special Issue No. 17.

■ In points of error numbers 13, 14, 15, 18, 19, 20 and 21, appellants assert that appellee is not entitled to damages for the delays and breach of contract by appellants because appellee did not comply with and appellants did not waive compliance with specific contractual provisions relating to extra work and delay. Specifically, they say appellee failed to give the required notice to appellants' architect for any claim for increased compensation and that appellee also failed to acquire from appellants any change orders for extra and unexpected work before appellee would be entitled to extra compensation.

At the outset, it is noted that appellants do not contest nor allege as error the jury's findings that the University delayed Contractor's completion of either of these projects and that the delays did cause damage and extra expense to Contractor. We think appellants' allegations of error in the points of error under discussion, complaining of failure of strict compliance with the terms and conditions of the contract, are virtually identical to and are answered by two other college construction cases: *North Harris, Etc. v. Fleetwood Const. Co.,* 604 S.W.2d 247 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Bd. of Regents, U. of Texas v. S & G Const. Co.,* 529 S.W.2d 90 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.).

In both of these cases it was held that since the college had originally breached the contract, requiring changes in the work and extra work and expense, it relinquished its procedural rights concerning change orders and claims for additional costs. The following language in *North Harris, Etc. v. Fleetwood Const. Co., supra,* 604 S.W.2d at 254, is applicable to the arguments raised in these points of error:

We hold that the College breached the contract and thereby relinquished its procedural rights concerning change orders and claims for additional costs when it refused to acknowledge the "concealed condition." Fleetwood was not required to wait for an adjudication on the question of whether a concealed condition existed before resuming work on the contract. At the point of breach, when the College failed to change its specifications to conform to the actual soil condition, Fleetwood was given the choice of stopping work and recovering under the contract or continuing to work and claiming damages caused by the breach. Fleetwood chose to continue and sue for damages, and the College cannot now insist on enforcement of the claims provision. *See Board of Regents of the University of Texas v. S & G Construction Co.,* 529 S.W.2d 90, 96 (Tex.Civ.App.— Austin 1975, writ ref'd n.r.e.).

Language to the same effect is found in the *University of Texas* case, *supra,* and we think the law of these two cases, in fact situations similar to those in this case, are controlling. Appellants' points of error 13, 14, 15, 18, 19, 20 and 21 are therefore overruled.

■ In points of error 16, 17 and 22 through 29, appellant contends that there

was either no evidence or insufficient evidence to support the jury findings that Contractor sustained damages as a result of delays caused by the University. These points do not require much discussion. The record in this case is somewhat voluminous, consisting of three volumes of statements of fact and six volumes of exhibits. There is ample evidence, and more than sufficient evidence to prove that Contractor sustained heavy damages as a result of the delays encountered as a result of the University's indecision and changes of mind. The record shows that appellee's overhead costs for remaining on these jobs was $700.00 per day, with $150.00 per day for general office expense, and $550.00 for field expenses. Appellee's construction superintendent, Bill McCarty, testified to these costs and to the effect that appellee was seeking damages of $133,000.00 for 190 days delay on the Music Practice Building Project and $41,300.00 for 59 days delay on the Visitors Center Building.

While there is much more evidence to support Contractor's claim for delay damages, we deem it unnecessary to cite any more, and simply hold that there was sufficient evidence of probative force to support the jury's findings on the fact that delays had caused damages to Contractor in the amounts found by the jury. Appellants' points of error 16, 17 and 22 through 29 are overruled.

■ In point of error number 30 appellants contend that an explanatory instruction given by the trial court in its charge with regard to a partial instructed verdict for appellee Contractor was a comment on the weight of the evidence and thus erroneous. We agree and sustain this point of error.

At the conclusion of all of the evidence, the trial court withdrew from the jury's consideration and rendered judgment as a matter of law on certain elements of damages sued for by both parties herein. Then, after the general instructions and after defining several terms used in the charge, and before submitting the issues, the court instructed the jury as follows:

You are instructed that the Court has determined the following, as a matter of law:

1. That the air conditioning screens as supplied and installed by Denton Construction Company were in accordance with the plans and specifications of the "Music Practice Buildings Contract"; that North Texas State University is obligated to remit to Denton Construction Company the $10,000.00 retainage previously withheld; and that Denton Construction Company is entitled to recovery of $10,000.00 from North Texas State University.

2. That the "liquidated damages" provisions of both the "Music Practice Buildings Contract" and the "Visitors Center Contract" are void and as such, unenforcible; that North Texas State University is obligated to remit to Denton Construction Company the $8,360.00 retainage previously withheld as "liquidated damages" on the "Visitors Center Contract" to Denton Construction Company; and that Denton Construction Company is entitled to recovery of $8,360.00 from North Texas State University.

The foregoing findings by the Court are not to be considered by you, the Jury, as a comment by the Court upon any factual questions submitted for your consideration in this Charge. As you have been previously instructed, you are the sole judges of the credibility of the witnesses and the weight to be given their testimony. However, the Court shall determine matters of law, and as such, you are governed by the instructions contained in this Charge.

We agree with appellants' contentions in regard to this instruction and hold that it was an unnecessary and impermissible comment on the weight of the evidence, calculated to prejudice the rights of appellants in the eyes of the jury. We are at a loss to determine why this instruction was included in the charge. It was not an instruction, so far as we can see, designed to be helpful or instructive to the jury in answering any of

the special issues in the court's charge. It was not at all necessary for the court to advise the jury that he had held appellants liable as a matter of law on several of the issues originally involved in the dispute. The practice among trial judges has always been to not advise the jury that the trial court has rendered judgment for either party on any part of the case submitted to them.

■ The law has always been that the trial court shall not comment on the evidence or the weight thereof in any manner, nor give aid to the jury in their fact deliberation process. Instructions by the trial judge are permitted when such are necessary to aid the jury in defining or explaining some matter for the jury. Tex.R.Civ.P. 277, as amended in 1973, reads in pertinent part:

> The court shall not in its charge comment directly on the weight of the evidence ... but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment ... *where it is properly a part of an explanatory instruction or definition.* [Emphasis added.]

■ The court is still, under amended rule 277, strictly prohibited from commenting on the weight of the evidence; but he may incidentally comment where the comment is necessary or proper as part of an explanatory instruction or definition. In this instance, this instruction was not explanatory of anything, except that the court had ruled as a matter of law that appellee was entitled to prevail on the questions of the air conditioning screens and liquidated damages, and to recover sums withheld by appellants for those items. We think this tended to imply to the jury that the court thought the law and the facts were with the appellee, and as such, the instruction was erroneously prejudicial. *See Harrison v. Harrison,* 597 S.W.2d 477 (Tex.Civ.App.— Tyler 1980, writ ref'd n.r.e.); *Thomas v. Oil & Gas Bldg., Inc.,* 582 S.W.2d 873 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n.r. e.); *Spradling v. Williams,* 566 S.W.2d 561 (Tex.1978).

Neither do we think that the language contained in the last paragraph of the instruction, tending to ameliorate the effects of the earlier instruction, cured the error. The damage had been done; the jury had been told that on at least part of the case, the trial court agreed with appellee, and rendered judgment for recovery by appellee of certain sums sought by it. The instruction did not actually instruct, or aid, the jury with regard to any issues in the charge. It simply advised the jury that the court agreed with appellee, at least on part of the case, and as such it was harmful, prejudicial, unnecessary and requires reversal of this case for a new trial.

That part of the judgment awarding $33,-000.00 to appellee as actual damages and $82,180.00 as exemplary damages, is reversed and rendered. The rest of the judgment is reversed and remanded for new trial.