Affirmed and Memorandum Opinion filed February 5, 2004









Affirmed and Memorandum Opinion filed February 5,
2004.

 

 

                                                                              

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00163-CV

____________

 

ABRAHAM & COMPANY, INC.,
D/B/A ABRAHAM=S
ORIENTAL RUGS,
Appellant

 

V.

 

REBECCA VANCE SMITH, Appellee

 



 

On Appeal from the County
Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 740,929

 



 

M E M O R A N D U M  
O P I N I O N








Abraham & Company, Inc.[1]
appeals from a judgment favoring Rebecca Vance Smith in her breach of contract
and conversion action.  Smith sued
Abraham based on a consignment agreement to sell four rugs she owned.  After a bench trial, the court awarded Smith
$12,000 in damages plus $28,000 in attorney=s fees through trial, $5,000
for an appeal, and $2,500 in the event of an appeal to the Texas Supreme
Court.  On appeal, Abraham concedes
liability for conversion but contends that the trial court erred in awarding
attorney=s fees because (1) Smith=s pleadings and evidence do not
support a breach of contract finding, and (2) the trial court was not required
to interpret a contract to decide the conversion claim.  We affirm.

Background

In 1991, Smith and Abraham entered into a written
consignment agreement, under which Abraham accepted four of Smith=s oriental rugs and agreed to
restore the rugs and attempt to sell them for a 10 percent commission.  The contract placed a total value of $14,000
on the rugs, guaranteed a $7,000 payment to Smith after 90 days, and provided
that Abraham would return two of the rugs if not sold within six months.  At the conclusion of the six month
contractual period, Abraham had not sold any of the rugs and had neither
returned the rugs nor paid the guaranteed $7,000.  Smith testified that she wrote to Abraham in
1991 requesting $7,000, but she received no response.  She further testified that in a telephone
conversation, she agreed to leave the rugs with Abraham, and he agreed to
continue to try to sell them in exchange for a 10 percent commission.  This agreement was reiterated in letters and
further telephone calls.  Abraham
subsequently sold one of the rugs and sent Smith a $2,000 check for her share
of the proceeds.  In 2000, Smith
requested return of her rugs and was informed that the rugs were no longer at
Abraham=s and were believed to have
been returned to her.  She testified that
she never received the rugs.








Smith sued Abraham for breach of contract and conversion.[2]  During trial, at the close of Smith=s case, the court granted
judgment based on limitations against the breach of the original written
contract claim; however, the court permitted Smith to go forward on her claims
for conversion and subsequent breach of the orally modified contract.[3]  The court=s judgment finds liability
against Abraham but does not specify its basis. 
No findings of fact or conclusions of law were requested or filed;
hence, we view the trial court=s judgment as impliedly finding
all facts necessary to support its judgment. 
See Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 52 (Tex.
2003).

The Pleadings

Abraham first contends that Smith=s pleadings do not support
judgment for a breach of an orally modified agreement.  Abraham acknowledges that Smith pled a breach
of a written contract cause of action but argues that the petition does not
mention the word Aoral@ and does not specifically set
out a claim for breach of a modified contract.

Under Texas law, pleadings must meet a Afair notice@ standard, requiring that an
opposing party be able to ascertain from the pleading the nature and basic
issues of the controversy and the testimony that will be relevant.  Horizon/CMS Healthcare Corp. v. Auld,
34 S.W.3d 887, 897 (Tex. 2000). 
Specifically, a petition is deemed sufficient if it gives fair and
adequate notice of the facts upon which the plaintiff bases her claim.  Id. 
The purpose of the rule is to give the opposing party sufficient
information to enable him to prepare a defense. 
Id.  When no special
exceptions are filed, as in the present case, we construe a petition liberally
in favor of the pleader.  See id.








In the AFacts@ section, Smith=s live petition states AThe original consignment
agreement called for certain actions to occur 90 days and six months after
March 5, 1991, however, the parties subsequently agreed to forego those actions
and the rugs remained with Defendant on consignment for sale to customers.@   This language clearly apprised Abraham that
Smith was not suing solely on the basis of the original written contract but
was alleging a modification occurred. 
Although the petition does not use the term Aoral,@ Abraham cites no authority
requiring the use of such precise terminology to plead an oral modification,
and we are aware of no such authority. 
The petition then alleges that Abraham made continuing assurances that
he was trying to sell the rugs and would remit the proceeds to Smith for a 10
percent commission.  Indeed, the Facts
section closely matches the evidence adduced at trial concerning the parties= dealings.  Accordingly, we find that Smith=s pleadings sufficiently
apprised Abraham of the claims on a modified contract.  This sub-issue is overruled.

The Evidence

Abraham next contends that the evidence was legally and
factually insufficient to support the trial court=s implied finding on breach of
contract.[4]  In reviewing Abraham=s sufficiency challenges, we
utilize the normal standards of review. See St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 519B20 (Tex. 2003) (legal sufficiency);
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406B07 (Tex. 1998) (factual sufficiency).  To establish a breach of contract claim, a
party must show: (1) a valid contract existed, (2) the party performed or
tendered performance, (3) the defendant breached the contract,  and (4) the plaintiff sustained damages as a
result of the breach.  Renteria v. Trevino, 79 S.W.3d 240, 242 (Tex.
App.CHouston [14th Dist.] 2002, no
pet.).  The elements of a valid contract
are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each
party=s consent to the terms, and (5)
execution and delivery of the contract with the intent that it be mutual and
binding.  Angelou v. African Overseas
Union, 33 S.W.3d 269, 278 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  In determining the existence of
an oral contract, we look to the communications between the parties and to the
acts and circumstances surrounding those communications.  Prime Prods., Inc. v. S.S.I. Plastics,
Inc., 97 S.W.3d 631, 636 (Tex. App.CHouston [1st Dist.] 2002, pet.
denied).  Generally, a written contract
may be modified by a subsequent oral agreement. 
See, e.g., DiMiceli v. Affordable Pool Maint., Inc., 110 S.W.3d 164, 171 (Tex. App.CSan Antonio 2003, no pet. h.); Robbins
v. Warren, 782 S.W.2d 509, 512 (Tex. App.CHouston [1st Dist.] 1989, no
writ).













Abraham primarily argues under
this issue that no modification ever occurred.[5]  As discussed above, the parties= original contract contained
provisions guaranteeing a $7,000 payment to Smith after 90 days, and requiring
Abraham to return two of the rugs if not sold within six months.  After the sixth month period, Abraham had not
sold any of the rugs, returned the rugs, or paid the guaranteed $7,000.  Smith then sent Abraham a letter insisting on
payment of $7,000, but she received no response.  Smith clearly and repeatedly testified,
however, that she and Abraham agreed in a telephone conversation that she would
leave the rugs with him and that he would continue to try to sell them in
exchange for a 10 percent commission.[6]  In his testimony, Abraham confirmed that,
after the six month period, he agreed in a telephone conversation to continue
to try to sell the rugs.  The contract
was thereby modified to eliminate the provisions regarding time and the return
of the rugs.  Abraham eventually did sell
one of the rugs, took his commission, and remitted the remainder to Smith, all
pursuant to the modified agreement. 
Based on the communications between, and actions by, the parties, we
find that the evidence was legally and factually sufficient to support the
conclusion that there was an offer, an acceptance, and a meeting of the minds
regarding the modification.  Ultimately,
however, Abraham failed to either return the remaining rugs or remit the
proceeds if sold.  Accordingly, the trial
court as fact finder could have reasonably found that Abraham breached the
modified agreement.

Abraham further contends the
alleged modification lacked consideration.[7]  To be valid, a modification to a contract
must itself be supported by consideration. 
Walden v. Affiliated Computer Servs., Inc.,
97 S.W.3d 303, 314 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied).  Consideration may consist of a
benefit that accrues to one party or a detriment incurred by the other
party.  Id. at 315.  At the conclusion of the six month period in
the original contract, Smith had the right to receive two of her rugs back and
$7,000, and Abraham had the right to keep two of the rugs.  Although it is unclear whether Smith intended
to relinquish her right to the cash, she did relinquish her right to immediate
return of the rugs, and, in promising to continue to sell the rugs for a 10
percent commission, Abraham relinquished his right to keep two of the
rugs.  Thus, in agreeing to the modified
contract, Smith relinquished her right to immediate return of the rugs and
promised a 10 percent commission for sale of the rugs, and Abraham relinquished
his right to keep two of the rugs and promised to continue attempting to sell
the rugs.  In short, both parties
received consideration for modifying the contract.

In sum, the pleadings and
evidence were sufficient to support the implied breach of contract
finding.  Accordingly, the award of
attorney=s fees was not only proper but
mandatory.  See Tex. Civ. Prac. & Rem. Code Ann.
' 38.001(8) (Vernon 1997); Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex.
1998).  Abraham=s first issue is overruled.

 








Conversion








In his second issue, Abraham
contends that the implied finding of liability on the conversion claim does not
support the award of attorney=s fees.  Generally, attorney=s fees are not recoverable in a
tort cause of action.  See Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (Vernon 1997); Academy
Corp. v. Interior Buildout & Turnkey Constr., Inc., 21 S.W.3d 732, 743 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  However, when a conversion claim
is significantly intertwined with or dependent upon the interpretation of a
contract between the parties, an award of fees may be appropriate.  See High Plains Wire Line Servs., Inc. v. Hysell Wire Line Serv., Inc., 802 S.W.2d
406, 408, 410 (Tex. App.CAmarillo 1991, no writ)[8];
Exxon Corp. v. Bell, 695 S.W.2d
788, 791 (Tex. App.CTexarkana 1985, no writ)[9];
see also Kucel v. Walter E. Heller & Co.,
813 F.2d 67, 73 (5th Cir.) (citing Bell as Texas rule); F.D.I.C. v.
Golden Imports, Inc., 859 S.W.2d 635, 646-47 (Tex. App.CHouston [1st Dist.] 1993, no writ) (citing Bell
but holding resolution of conversion claim did not depend on contract
interpretation and thus declining to award fees).[10]  In the present case, we find the conversion
claim was significantly interwoven with the contract claim and indeed was
dependent on the court=s interpretation of the
contract.[11]  The original contract stated Abraham received
four of Smith=s rugs for consignment sale,
that after 90 days $7,000 was guaranteed, and after six months, if no rugs had
been sold, Abraham was to return two of the rugs.  The subsequent modification dispensed with
some but not all of the provisions in the original contract.  Therefore, in order to resolve the conversion
liability issue, the court had to decide which contract provisions were still
in effect, particularly as to whether Abraham was required to return any of the
rugs, all of the rugs, or just two of the rugs.[12]  The court also had to reference the contract
in calculating the proper amount of damages, given the $7,000 guarantee, the
value placed on the rugs in the contract, and the fact that Abraham partially
performed by selling one of the rugs and remitting $2,000 of the proceeds to Smith.  In short, we find Smith=s conversion claim fits within
the limited Bell/High Plains exception.  Accordingly, Abraham=s second issue is overruled.[13]

Conclusion

In sum, the award of attorney=s fees was supported by both
the contract claim and the conversion claim. 
The trial court=s judgment is affirmed.

 

 

 

 

 

 

/s/      Adele
Hedges

Chief Justice

 

 

Judgment rendered and
Memorandum Opinion filed February 5, 2004.

Panel consists of Chief Justice
Hedges and Justices Anderson and Seymore.











[1]  Abraham &
Company, Inc. is owned by Samuel Abraham. 
For simplicity, we will use the name AAbraham@ to refer both to the company and its owner.





[2]  Smith also
plead claims for breach of fiduciary duty, fraud, malice, and exemplary
damages, but the court granted partial summary judgment on these issues.





[3]  The trial
judge spoke of the agreement as either a Asubsequent
oral agreement@ or a modified contract.  As will be discussed, the evidence supports
the conclusion that the parties agreed to an oral modification of the contract,
so we will categorize the agreement accordingly.





[4]  Abraham does
not distinguish between its legal and factual sufficiency arguments, so we will
discuss them together.





[5]  Abraham notes
that when one party breaches a contract, the other party has two options:
continue performance or cease performance, citing Chilton Insurance Co. v.
Pate & Pate Enterprises, 930 S.W.2d 877, 887-88 (Tex. App.CSan Antonio 1996, writ denied).  Based on this rule, Abraham argues that by
leaving her rugs with him, Smith elected to continue performance and cannot now
sue for breach.  This argument evidences
a misunderstanding both of the cited rule and of the nature of the court=s implied finding. 
The rule does not affect whether the nonbreaching
party can sue for a former or future breach, it only affects whether the nonbreaching party itself is then required to perform.  See id.; Board of Regents of Univ.
of Texas v. S & G Constr. Co., 529 S.W.2d 90,
97 (Tex. Civ. App.CAustin
1975, writ ref=d n.r.e.); see also
Assoc. Indem. Corp. v. CAT Contracting, Inc., 964
S.W.2d 276, 286 & n.8 (Tex. 1998) (discussing S & G Constr.).  In
other words, if the party continues performance in the face of a breach, it
obligates itself to fully perform; if it ceases performance, it cannot be held
to its obligation.  See Chilton
Ins. Co., 930 S.W.2d at 887-88; S & G Constr.
Co., 529 S.W.2d at 97.  In the
present case, however, we find the evidence supports the trial court=s implied finding that the parties modified their
agreement.  Therefore, we need not
consider whether the evidence could support the proposition that Smith simply
elected to continue under the original contract.





[6]  During cross-examination, Smith
repeated her claim that the agreement was not just what was in the written
contract so many times that defense counsel finally said AI understand.  You=ve said that numerous times. . . .  And I will throw in with you that you=re always going to say that.  Okay? . . . 
So you don=t need to say it again.@  In its brief, however, Abraham emphasizes
portions of Smith=s testimony wherein she said that the basic agreement
remained as it was in the written contract. 
Clearly, seen in its entirety (and not just selected excerpts), Smith=s testimony is that the parties agreed to modify the
contract to eliminate certain provisions in the original document.

Abraham also cites to a fax Smith sent to
Abraham in 2000 in which she included a copy of the original contract as proof
the written document contained the sole agreement between them.  However, the fax cover letter states that the
invoice was included for the purpose of showing Awhere my
four rugs were picked up@; therefore, the fax does not support the contention
that no modification occurred.





[7]  Smith argues
that no consideration was necessary because Uniform Commercial Code sections
2.209 and 2.236 control.  See Tex. Bus. & Com. Code Ann. '' 2.209, 2.326 (Vernon 1994 & Supp. 2004).  Under those sections, a modification to a Asale or return@
agreement requires no consideration. 
This argument was not preserved for appellate review because it was not
raised in the trial court.





[8]  In High
Plains, the trial court was required to interpret whether a contract
effecting the sale of a business included certain property, which was the basis
of the conversion action.  802 S.W.2d at
408, 410.  Although the court of appeals
found the plaintiff could thus be entitled to attorney=s fees, it nevertheless held the plaintiff forfeited
the fees by failing to properly present the claim.  Id. at 410.





[9]  In Bell,
the trial court was required to determine whether a contract for sale of a
water well included the pump and pipe that were subjects of the conversion
action.  695 S.W.2d at 789-91.  Based on this intertwining between the
contract and the conversion claim, the court of appeals affirmed the award of
attorney=s fees.  Id.
at 791.





[10]  The court in Golden
Imports stated that the conversion claim depended primarily on an analysis
of defendant=s right of offset and not on an interpretation of a
contract between the parties.  859 S.W.2d at 646-47.





[11]  Abraham=s argument on this issue consists entirely of a
discussion of the Bell and High Plains cases followed by the bald
assertion that the conversion claim stood on its own without any need to
reference the agreement.





[12]  Abraham
asserted at trial that he was to receive two of the rugs to recover the costs
of cleaning and restoration, but Smith testified she understood the costs to be
covered by the commission.





[13]  Abraham does not attack the court=s finding of conversion liability or
the amount of actual damages.