**REVERSE and REMAND and Opinion Filed August 31, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00379-CV

**NEWSOM, TERRY & NEWSOM, LLP, AND
STEVEN K. TERRY, Appellants
V.
HENRY S. MILLER COMMERCIAL COMPANY, Appellee**

**On Appeal from the 134th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-09-01306-G**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Reichek

This is the second appeal following a jury trial in this suit for legal malpractice. Newsom, Terry & Newsom, LLP and Steven K. Terry (collectively "Terry") challenge the trial court's judgment in favor of Henry S. Miller Commercial Company ("HSM") on the basis that, (1) the evidence is legally and factually insufficient to support the jury's findings on breach of the standard of care, proximate cause, gross negligence, and damages, (2) the trial court erred in refusing to submit a jury charge question on the fault and proportionate responsibility of third parties, (3) the court's judgment includes an impermissible double recovery of

interest, (4) the trial court erred in admitting unreliable expert testimony, (5) the award of exemplary damages is constitutionally excessive, (6) the jury charge includes instructions that inappropriately comment on the weight of the evidence, and (7) the judgment was based on a claim that was illegally assigned in whole or in part. We conclude the assignment issue was resolved in the previous appeal, and we decline to reconsider our holding. After reviewing the record, we further conclude the evidence is sufficient to support the jury's findings. With respect to the jury charge, however, we conclude that one of the jury instructions constituted an impermissible comment on the weight of the evidence that was calculated to cause, and probably did cause, the rendition of an improper judgment. Accordingly, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

## Background

In 2004, HSM, a real estate broker, and its former employee, Steven Defterios, negotiated the purchase of nine commercial real estate properties on behalf of their client, James A. Flaven. The properties were owned by various partnerships and limited liability companies formed by Barry Nussbaum. Defterios told Nussbaum that Flaven was the beneficiary of a multimillion dollar trust fund and he wanted to use the money to invest in real estate. Flaven eventually put $500,000 in an escrow account and signed contracts to purchase the properties with an initial closing date of August 2004.

The closing date was rescheduled multiple times, and Defterios told Nussbaum it appeared there were problems getting Flaven's trust to release the money. According to Nussbaum, Defterios stated on many occasions that he had verified the existence of the funds and the closings were imminent. Over a year later, however, when the contracts still had not closed, Flaven disappeared. The properties at issue were either deeded to banks in lieu of foreclosure or sold for a loss.

The companies that owned the properties sued HSM and Defterios for fraud and negligent misrepresentation (the "Underlying Suit"). Terry served as trial counsel for both defendants. Despite knowing from the beginning that Flaven could be held at least partly responsible for the property owners' damages, Terry stated he actively chose not to pursue finding Flaven or involving him in the case because he suspected Flaven was a con man and he did not want to help the property owners develop facts showing that Defterios had lied. Shortly before trial, the property owners located Flaven's brother who revealed that Flaven was a truck driver and not the beneficiary of a trust fund. Flaven himself was never found.

After Flaven's brother was deposed, Terry attempted to designate Flaven as a responsible third party ("RTP"). The motion to designate was filed twenty-four days before trial and asserted that Flaven was responsible for all or, alternatively, a proportionate part of the damages suffered by the property owners. The property owners objected that the motion to designate Flaven was untimely and Terry had no

valid reason for not designating him earlier. They further objected that HSM and Defterios had not pleaded sufficient facts to show a duty owed by Flaven to the property owners. The trial court denied the motion to designate Flaven without stating the reason for its ruling.

The Underlying Suit was tried to a jury. During the course of trial, Defterios admitted he never verified Flaven had the money necessary to fund the purchases. At the close of evidence, Terry stipulated Defterios was acting within his agency relationship with HSM and that any findings against him would be binding on HSM. Terry stated the reason for the stipulation was that, although there was evidence showing Defterios was an independent contractor, HSM allowed Defterios to use the title of HSM vice-president on his email account, letterhead, and business cards. Based on a statutory provision that stated real estate brokers are responsible for the conduct of their salespersons, Terry believed HSM could not avoid liability for Defterios's conduct, and he did not want the property owners to be able to argue Defterios's title was another fraudulent misrepresentation.

The jury ultimately found against HSM and Defterios and awarded the property owners over $12 million in damages. The trial court rendered judgment on the verdict and added prejudgment interest and costs to the final award. On appeal, this Court modified the judgment in minor respects, but otherwise affirmed. *See Defterios v. Bayou Bend, Ltd.*, 350 S.W.3d 659 (Tex. App.—Dallas 2011, pet. denied).

Following the verdict, HSM and Defterios filed this suit against Terry for malpractice. The allegations of negligence included that Terry failed to timely designate Flaven as an RTP and erred in stipulating HSM was responsible for Defterios's conduct.[1] Diamond State Insurance Company, HSM's insurance carrier, was also named as a defendant after it denied coverage for the judgment. The judgment creditors in the Underlying Suit filed an involuntary petition in bankruptcy against HSM which resulted in a reorganization plan approved by the bankruptcy court in July 2010. Under the plan, a portion of HSM's claims against Terry and Diamond State was assigned to the judgment creditors.

HSM eventually settled with Diamond State before trial for $6 million. As a result, all of HSM's and Defterios's claims against Diamond State were nonsuited. Immediately before trial, Defterios also nonsuited his claims against Terry and was no longer a party to the suit. The case proceeded to trial solely on HSM's malpractice claims against Terry.

After hearing the evidence, the trial court directed a verdict in favor of Terry on HSM's claims for gross negligence. The jury then found that the combined negligence of Terry, HSM, and Defterios was the proximate cause of HSM's injury. The jury apportioned responsibility as 50% to Terry, 40% to Defterios, and 10% to HSM. The jury further found that the amount by which the judgment rendered in

---

[1] HSM additionally asserted that Terry was negligent in failing to offer expert testimony as to damages and in failing to advise HSM of the potential conflict of interest between it and Defterios.

the Underlying Suit exceeded the judgment that would have been rendered but for Terry's negligence was $4,636,088. In the judgment, the trial court disregarded the jury's findings regarding Defterios, applied the 10% responsibility found by the jury as to HSM, and concluded the $6 million credit from HSM's settlement with Diamond State exceeded the amount of HSM's recoverable damages. Accordingly, the trial court rendered judgment that HSM take nothing on its claims against Terry.

HSM appealed the judgment to this Court. *See Henry S. Miller Commercial Co. v. Newsom, Terry & Newsom, L.L.P.*, No. 05-14-01188-CV, 2016 WL 4821684 (Tex. App.—Dallas Sept. 14, 2016, pet. denied) (mem. op.) ("*HSM I*"). Terry filed a cross appeal asserting, among other things, that the assignment of a part of HSM's malpractice claims to its judgment creditors was illegal and barred any recovery. *Id*. at *2. We concluded that HSM's right to bring its own cause of action for malpractice was not affected by the assignment and resolved the issue against Terry. *Id*. at *3.

In addressing HSM's appeal, we concluded the trial court properly directed a verdict in favor of Terry on HSM's claim for gross negligence arising out of his stipulation that HSM was responsible for Defterios's conduct. *Id*. at *5. We further held, however, that the trial court erred in directing a verdict for Terry on HSM's claim for gross negligence arising out of Terry's failure to timely designate Flaven as an RTP. *Id*. at *7. We reasoned that Terry could have designated Flaven earlier based solely on "the proposed transaction, its failure, and Flaven's identity as the

–6–

defaulting buyer" without conceding that Flaven was a fraud or that Defterios had misrepresented Flaven's wealth. *Id*. at *6. There was additional evidence showing Terry was aware of the extreme risks associated with not designating Flaven and that he chose not to do so despite those risks. *Id*. We recognized that Terry presented expert testimony supporting his concerns that designating Flaven earlier could have helped the property owners prove their case, and that his decision to wait to designate Flaven until after Flaven's brother was deposed was justified. *Id*. at *7. But we concluded "the existence of controverting evidence is not the standard for determining whether a directed verdict was proper." *Id*. We therefore reversed the trial court's judgment and remanded the case for a new trial on both liability and damages. *Id*. at *8.

On remand, HSM's malpractice claims against Terry were, once again, tried to a jury. In support of their allegations of negligence, HSM presented the testimony of Marc Stanley, counsel for the property owners in the Underlying Suit, and Lewis Sifford, HSM's legal expert. Stanley testified that Terry's failure to designate Flaven as an RTP was a "break" for him in representing the property owners because he was afraid a jury would put most, if not all of the blame for the failed transactions on Flaven from whom the property owners would not be able to collect damages. He felt that Flaven would be seen as the "lead bad guy" who conned everyone, including HSM and Defterios. Stanley stated that all of his clients' damages were ultimately caused by Flaven because of his failure to close on the purchase contracts.

–7–

Stanley acknowledged he needed proof that Flaven was a fraud to succeed on his claims against HSM and he stated the deposition of Flaven's brother provided him with that proof.

Sifford testified similarly. He stated that a reasonably prudent lawyer would have designated Flaven as an RTP earlier in the case because it was a "major avenue of defense." He pointed to the fact that Terry identified Flaven as a responsible third party early in discovery and, in an email to Diamond State ten months before trial, Terry characterized Flaven as "the principal actor in the claim." Sifford stated that juries tend to look for the "bad actor" in the case when determining fault. Here, Flaven was the initiator of all the bad acts and the reason the purchases did not close. Regardless of whether it was discovered that Flaven had no money, Sifford testified Terry could have placed the blame on Flaven for the property owners' damages based solely on the fact that he breached the purchase contracts.

Sifford stated Terry was negligent in not giving the jury the opportunity to apportion at least some of the liability for the property owners' damages to Flaven. Sifford noted that, in the untimely motion to designate Flaven, Terry stated Flaven could be found responsible for all of the property owners' damages. Terry made the same argument about Flaven's responsibility to the jury in his closing argument in the Underlying Suit. Given that there was no dispute that Flaven was a con man, and there was no evidence that HSM was aware of Flaven's fraud before he

disappeared, Sifford testified that a jury would likely have placed all of the liability on Flaven if he had been properly designated.

In contrast, Terry and his legal expert, Rogge Dunn, testified there were valid reasons for not designating Flaven as an RTP sooner. Terry testified that if he had designated Flaven earlier in the case, they would have needed to pursue discovery to support the designation. Terry did not want to give the property owners evidence to show that Flaven did not have the money he claimed to have. According to Terry, this evidence would have simply helped the property owners prove that Defterios lied when he said he had verified the existence of Flaven's funds. It was Defterios's misrepresentation that formed the entire basis of the property owners' claims.

Dunn agreed with Terry, stating that, HSM's best defense was that there was no evidence Defterios lied and, without Flaven in the case, there was no proof he was not the beneficiary of a large trust fund. He stated it was likely a jury would have believed the money existed based on Flaven's ability to make a $500,000 earnest money deposit. The fact that Flaven simply walked away from the deal would not, by itself, show that anyone committed fraud. In Dunn's opinion, it was not until Flaven's brother testified Flaven did not have the money he claimed to have that the purpose in not designating Flaven was removed.

The charge submitted to the jury contained the following instruction on the designation of RTPs:

With respect to the designation of responsible third parties, the relevant portions of Section 33.004 of the Texas Civil Practice and Remedies Code provide as follows:

(a) A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. The motion must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.

* * *

(f) A court shall grant leave to designate the named person as a responsible third party unless another party files an objection to the motion for leave on or before the 15th day after the date the motion is served.

(g) If an objection to the motion for leave is timely filed, the court shall grant leave to designate the person as a responsible third party unless the objecting party establishes:

(1) the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure; and

(2) after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure.

* * *

(1) After adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage. The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage.

Under this statute, a defendant is not required to provide evidence at the time of the filing of a motion for leave to designate a responsible third party, but the designation may be struck, by the Court, for lack of evidence after an adequate time for discovery has passed.

The designation of a responsible third party may be struck for lack of evidence after an adequate time for discovery has passed, as determined by the court. In resisting a motion to strike a designation of a responsible third party, the Terry Defendants would not have been required to prove the plaintiffs' case that there was fraud in the underlying transaction. They could rely on evidence of the proposed transaction, its failure, and the identity of a responsible third party as the defaulting buyer in resisting a motion to strike a designation of a responsible third party.

Terry objected to the last two paragraphs of the RTP instruction contending that, to the extent they merely repeated the statute, the repetition "constituted an impermissible comment by the Court on the weight of the evidence by drawing particular attention to sections of the statute that are already stated verbatim." As for the last two sentences of the instruction, the lawyers objected that "to the extent that Plaintiff relies on [*HSM I*], that authority is irrelevant and was unavailable to Defendants at the time of the underlying trial, and does not save the added two paragraphs from being redundant, incorrect, an improper comment on the weight of the evidence, and unduly prejudicial." The trial court overruled Terry's objections.

Unlike the charge in the first malpractice trial, the charge submitted to the jury in the second trial included only questions regarding Terry's liability for HSM's damages. Question No. 1 asked,

Did the negligence, if any, of the Terry Defendants proximately cause the injury complained of by Henry S. Miller in this lawsuit?

The jury answered, "Yes."

Question No. 2 asked,

–11–

What is the amount, if any, by which the judgment actually rendered in the Underlying lawsuit exceeded the judgment that would have been rendered but for the negligence you have found on the part of the Terry Defendants?

The jury answered, "$13,626,997."

Question No. 3 asked,

Do you find by clear and convincing evidence that the harm to Henry S. Miller resulted from gross negligence by the Terry Defendants in not timely seeking to designate James Flaven a responsible third party?

The jury answered, "Yes."

And, finally, Question No. 4 asked,

What sums of money, if any, should be assessed against the Terry Defendants and awarded to Henry S. Miller as exemplary damages for the conduct found in response to Question No. 1?

In response to Question No. 4, the jury found Steven Terry liable for $6 million in exemplary damages and Newsom, Terry & Newsom, L.L.P. liable for $1 million in exemplary damages.

The issue of attorney's fees damages arising from the property owners' post-judgment collection efforts and the bankruptcy proceedings against HSM was presented to the trial court for resolution. The court signed a final judgment awarding HSM "$15,395,910.20 (representing $14,303,316.50 in actual damages, plus prejudgment interest of $3,444,575.25, both having been appropriately reduced by a settlement credit of $6,000,000), plus additional prejudgment interest at the rate of $1,635.60 per day from December 20, 2019, until the day before this judgment

–12–

was signed, [] $6,000,000 in exemplary damages against Defendant Steven K. Terry, and [] $1,000,000 in exemplary damages against Defendant Newsom, Terry & Newsom." Terry timely brought this appeal.

## Analysis

### I. Illegality of Assignment

In his ninth issue, Terry contends the trial court erred in signing a judgment on the malpractice claim because the claim was illegally assigned to the judgment creditors in the Underlying Suit. In his briefing, Terry acknowledges this Court resolved this issue against him in our previous opinion in this case. *See id*. at *3. Terry states he has briefed the assignment issue "to provide the Court the opportunity to reconsider its holding in *HSM I*." We decline to do so. Accordingly, we overrule Terry's ninth issue.

### II. Sufficiency of the Evidence

In his second, third, and sixth issues, Terry contends the evidence presented at trial was legally and factually insufficient to support the jury's findings on (1) breach of the standard of care, (2) proximate cause, and (3) gross negligence.[2] In reviewing a legal sufficiency challenge to the evidence, we credit evidence that supports the verdict if a reasonable factfinder could have done so and disregard

---

[2] Terry also challenges the sufficiency of the evidence supporting the amount of damages awarded by the jury. For the reasons discussed in section III below, it is unnecessary for us to address the sufficiency of the evidence supporting either the amount of damages or HSM's claims of negligence other than Terry's failure to timely designate Flaven as an RTP.

contrary evidence unless a reasonable factfinder could not have done so. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 115 (Tex. 2009); *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). We consider all the evidence in the light most favorable to the prevailing party and indulge every reasonable inference in that party's favor. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520–21 (Tex. 2003). The evidence is legally sufficient if "more than a scintilla of evidence exists." *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Litton Loan Servicing, L.P. v. Manning*, 366 S.W.3d 837, 840 (Tex. App.—Dallas 2012, pet. denied). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010).

To evaluate a factual sufficiency challenge, we consider and weigh all the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We can set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id*. We must not substitute our judgment for that of the factfinder and should remain cognizant that the factfinder is the sole judge of witness credibility. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

"When a legal malpractice case arises from prior litigation, the plaintiff must prove that the client would have obtained a more favorable result in the underlying litigation had the attorney conformed to the proper standard of care." *Rogers v. Zanetti*, 518 S.W.3d 394, 401 (Tex. 2017). The proper standard of care is whether the decision made by the attorney was an objective exercise of professional judgment that a reasonably prudent attorney could make in the same or similar circumstances, not whether the attorney subjectively believed his acts were done in good faith. *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989). The failure to meet the proper standard of care may include an attorney's failure to exercise ordinary care in preparing, managing, and presenting litigation. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004). Expert testimony is required to show that tactical choices were unwise and the consequences of those choices. *Id*. at 119–20. Imprudent attorney actions that materially and unfavorably affect a client's defense will support a malpractice claim. *Rogers*, 518 S.W.3d at 404.

In this case, the evidence showed it was apparent early in the Underlying Suit that Flaven could be found at least partially, if not entirely, responsible for the damages suffered by the property owners. Terry disclosed Flaven as a potential RTP more than a year before trial, but chose not to designate him until after the deadline had passed. Without Flaven submitted to the jury as a potentially responsible party in the charge, there was no way for HSM to reduce its proportionate liability in the Underlying Suit. *See HSM I*, 2016 WL 4821684, at *5.

Terry argues that HSM's assertion that he could have designated Flaven earlier is purely speculative. He points to the fact that the trial court did not state its reasoning when it denied Terry's motion to designate Flaven. But, as we noted in *HSM I*, the trial court has little discretion regarding a timely-filed motion to designate an RTP. *Id*. The only two grounds asserted by the property owners in their objection to the designation were untimeliness and a lack of support in the pleadings. Had Terry designated Flaven earlier in the case, he would have had an opportunity to cure any deficiencies in the pleadings.

Terry next argues that "in his judgment, designating Flaven earlier would have harmed HSM's defense" because he was "concerned that, had Flaven been found, he would have helped prove [the property owner's] case that Defterios was lying about Flaven's financial resources." While Terry may have believed his actions were in HSM's best interests, the jury was free to accept the evidence presented by HSM that Terry's decision to not designate Flaven earlier was negligent. This is particularly true since it was not necessary for Terry to find Flaven to designate him as an RTP. *See id*. at *6 ("Neither was it necessary to serve Flaven, join him in the lawsuit, or even determine his whereabouts in order to designate him as a responsible third party."). Flaven's proportionate liability could have been established through the contracts he signed and his failure to close.

Finally, Terry argues there is insufficient evidence to show that his actions were the proximate cause of any damages. He contends that if the jury would have

found Flaven liable for all the property owner's damages, as HSM contends, then "logic dictates" the jury would have found no negligence on the part of HSM regardless of whether Flaven was listed in the charge. But failing to name Flaven as a responsible third party necessarily skewed the proceedings and shifted the focus to HSM. *See In re Greyhound Lines, Inc.*, No. 05-13-01646-CV, 2014 WL 1022329, at *4 (Tex. App.—Dallas Feb. 21, 2014, orig. proceeding) (mem. op.). The jury was presented with evidence of significant damages suffered by the property owners. And with Flaven not listed in the charge as a potentially responsible person, the jury could easily have decided to place the blame on HSM and Defterios as Flaven's brokers in the transaction, rather than have the property owners recover nothing. Terry's decision, therefore, materially and unfavorably affected HSM's defense. *See Rogers*, 518 S.W.3d at 404.

Terry also argues there is no evidence the jury would have found Flaven more than 50% responsible in the Underlying Suit. Thus, Terry contends there is no evidence that, but for his alleged negligence, HSM would not have been jointly and severally liable for the entire amount of the judgment under section 33.013(b)(1) of the Texas Civil Practice and Remedies Code. Terry does not explain why joint and several liability is not materially better than sole liability. Additionally, Terry does not address the fact that, in both his motion to designate Flaven and his closing argument to the jury in the Underlying Suit, Terry contended Flaven was responsible for most, if not all, of the property owners' damages. HSM presented expert

testimony that juries tend to look for the "bad actor" when assigning liability. Given that Flaven was the reason the deals were made, the source of the alleged fraud, and the only person responsible for breaching the purchase contracts, we cannot conclude the evidence is insufficient to show that a jury would likely have found Flaven more than 50% liable for the property owners' damages.

With respect to the evidence of gross negligence, we previously held based on a substantially similar record that the evidence was legally sufficient to support a finding that Terry was grossly negligent. *See HSM I*, 2016 WL 4821684, at \*7. After reviewing the record before us in this appeal, we conclude once again that the evidence is legally sufficient, and further conclude the jury's finding that Terry was grossly negligent is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. The record shows Terry was aware early in the case that HSM was facing significant exposure, yet he consciously chose not to designate a party he knew could bear a substantial portion of the responsibility. While Terry argues that gross negligence can never be based on an error in judgment, an attorney's tactical decisions must be objectively reasonable. *Cosgrove*, 774 S.W.2d at 665. HSM presented evidence that no reasonably prudent attorney would have waited until after the deadline had passed to designate Flaven as an RTP given the extreme risk that HSM could be found solely liable for the property owner's damages.

In the alternative, Terry argues the allegedly negligent acts on which this suit was based were all committed by him alone and there is no evidence to support the jury's finding of gross negligence against his law firm. Terry cites no authority in support of this argument. It is undisputed that, at all relevant times, Terry was a partner of Newsom, Terry & Newsom, LLP. A firm practicing as a limited liability partnership is liable for the malpractice of its partners. *See David v. Howeth*, No. 02-20-00078-CV, 2020 WL 6165298, at *12 n.6 (Tex. App.—Fort Worth Oct. 22, 2020, pet. denied) (mem. op.).

Based on the foregoing, we conclude the evidence is legally and factually sufficient to support the jury's findings as to breach of duty, proximate cause, and gross negligence.

## III. Jury Instruction on RTP Designation

Although the evidence is sufficient to support the jury's findings, we conclude the judgment must be reversed because the jury charge included an instruction that improperly suggested how the jury should resolve the issues of Terry's negligence and gross negligence. Terry challenges the propriety of several portions of the charge in his eighth issue. Our analysis focuses on the last two sentences of the RTP instruction which read,

> In resisting a motion to strike a designation of a responsible third party, the Terry Defendants would not have been required to prove the plaintiffs' case that there was fraud in the underlying transaction. They could rely on evidence of the proposed transaction, its failure, and the identity of a responsible third

–19–

party as the defaulting buyer in resisting a motion to strike a designation of a responsible third party.

This portion of the instruction pulls language from our opinion in *HSM I* and imports it into the jury charge out of context. The original context was a discussion of whether there was sufficient evidence to support a finding that Terry was grossly negligent. *See HSM I*, 2016 WL 4821684, at *7. In concluding there was, we stated that Terry could have designated Flaven as an RTP earlier based on "the proposed transaction, its failure, and Flaven's identity as the defaulting buyer." *Id*. But we also observed there was evidence, including expert testimony, showing that a reasonably prudent lawyer would have waited until after Flaven's brother was deposed, and Flaven's fraud was revealed, to designate Flaven. *Id*. We concluded that, while the jury could have credited this testimony and found in favor of Terry, the existence of controverting evidence was not the standard for granting a directed verdict. *Id*. The conflicting evidence required the issue to be submitted to the jury. *Id*.

By instructing the jury that Terry would not have been required to "prove the plaintiffs' case" to designate Flaven as an RTP, the charge suggested, if not overtly instructed the jury, that Terry's reasoning for not designating Flaven earlier in the case was flawed. The charge made HSM's theory of negligence the law of the case. A trial court's charge may not comment on the evidence or the weight of the evidence in any manner. *See* TEX. R. CIV. P. 277. An impermissible comment on the weight of the evidence occurs when, after examining the entire charge, it is

–20–

determined that the judge assumed the truth of a material controverted fact or exaggerated, minimized, or withdrew some pertinent evidence from the jury's consideration. *Am. Bankers Ins. Co. v. Caruth,* 786 S.W.2d 427, 434 (Tex. App.—Dallas 1990, no writ). An instruction also will be held to be an improper comment on the weight of the evidence if it suggests to the jury the court's opinion concerning the matter about which the jury is asked. *Ferguson v. DRG/Colony N., Ltd.,* 764 S.W.2d 874, 886 (Tex. App.—Austin 1989, writ denied). Instructing the jury on an issue that has previously been decided as a matter of law may constitute an unlawful comment on the weight of the evidence where the instruction was unnecessary to clarify the issues still to be decided by the jury. *Mader v. Aetna Cas. & Sur. Co.*, 683 S.W.2d 731, 733 (Tex. App.—Corpus Christi–Edinburg 1984, no writ).

The first portion of the RTP instruction sets forth the relevant provisions of section 33.004 of the civil practice and remedies code. This gave the jury all the law it needed on the requirements for designating responsible third parties and the level of proof necessary to resist a motion to strike. Including our discussion of the gross negligence evidence from *HSM I* added no clarity to the law to be applied, but rather served only to suggest that the jury should find Terry negligent. *See In re Commitment of Shelton*, No. 02-19-00033-CV, 2020 WL 1887722, at *12 n.7 (Tex. App.—Fort Worth April 16, 2020, no pet.) (mem. op. on reh'g) (instructions in jury charge should not advise jury that a fact issue has been conclusively established since instruction might unduly influence jury's answers about other facts in the

case); *see also Bd. of Regents of N. Tex. State Univ. v. Denton Const. Co.*, 652 S.W.2d 588, 594–95 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.) (instruction that tended to imply court thought law and facts were with appellee was erroneously prejudicial). A statement of law that encourages the jury to resolve a question a certain way, even if it is a correct statement of law, should not be in the jury charge. *GTE Mobilnet v. Telecell Cellular*, 955 S.W.2d 286, 292 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

The issue of Terry's tactical choices was a hotly contested issue at trial. An improper instruction is especially likely to cause an unfair trial when the evidence is sharply conflicting. *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 617–618 (Tex. App.—Dallas 2010, no pet.). The reasoning behind Terry's decision to not designate Flaven as an RTP earlier was the subject of extensive testimony, including expert testimony from both sides. Trial tactics is the type of issue that requires expert testimony. *See Childs v. Crutchfield*, No. 09-07-065 CV, 2007 WL 5075982, at *6 (Tex. App.—Beaumont Sept. 13, 2008, pet. denied) (mem. op.). As such, any suggestion by the court that Terry should have made a different decision would likely sway a jury. By expanding the RTP instruction to specifically state what Terry could have done, the trial court necessarily implied what it believed Terry should have done.

Reversal is required if an improper comment on the weight of the evidence is one that was calculated to cause and probably did cause the rendition of an improper

judgment.  *Redwine v. AAA Ins.*, 852 S.W.2d 10, 14 (Tex. App.—Dallas 1993, no writ).  In his closing argument at trial, HSM's counsel spent a great deal of time on the RTP issue.  On multiple occasions, he used the language in the charge to dispute Terry's testimony regarding his choice of tactics in the Underlying Suit saying:

> Well, you guys are going to look in the charge.  The charge literally says the fact that you can identify the person who is responsible for closing and he didn't close is sufficient to file the responsible third-party.  It's in the charge.  You guys will look at it.
>
> Why did I ask all my questions?  Because I knew that was going in the charge, right?
>
> . . .
>
> And what he's going to tell you is he had to wait until he got Brian Flaven's deposition to prove Flaven was a con man.  And that - - you're going to look at the charge, that is simply flat wrong.  It's just wrong.  He did not have to wait until he got Brian Flaven's deposition.

Because of the inclusion of the language from our prior opinion in the jury charge, HSM's counsel was able to argue the charge would instruct them that Terry's strategy, and his defense to the negligence claim on the RTP issue, was invalid.

In addition to counsel's argument, the wording of the jury questions made the RTP issue the sole focus of the charge.  Although Question No. 1 asked the jury about Terry's negligence generally, Question No. 3 asked whether "the harm" to HSM resulted from Terry's gross negligence in failing to timely designate Flaven as an RTP.   By using the phrase "the harm," the question asked whether *all* the harm suffered by HSM was caused by Terry's untimely attempt to designate Flaven.

–23–

Question No. 4 then asked the jury to determine what amount of exemplary damages should be assessed for the conduct found in response to *Question No.1*. Because a plaintiff can only recover exemplary damages for gross negligence, and the only act of negligence that was asserted as being grossly negligent was the failure to timely designate Flaven, the charge necessarily presumed the untimely RTP designation was the basis of the general negligence finding in Question No. 1. Accordingly, the improper RTP instruction impacted all of the jury's responses and likely caused the rendition of an improper judgment. We sustain Terry's eighth issue.

We are cognizant of the fact that reversal in this case may require the parties to engage in a third trial on the merits. This result is compelled, however, by the trial court's submission of a jury charge that was patently unfair to the defendants. Based on the foregoing, it is unnecessary for us to address the remainder of Terry's issues. We reverse the trial court's judgment in its entirety and remand the cause for further proceedings consistent with this opinion.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Carlyle, J., dissenting.

200379F.P05

–24–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

NEWSOM, TERRY & NEWSOM, LLP AND STEVEN K. TERRY, Appellants

No. 05-20-00379-CV          V.

HENRY S. MILLER COMMERCIAL COMPANY, Appellee

On Appeal from the 134th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-09-01306-G.

Opinion delivered by Justice Reichek. Justices Nowell and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered August 31, 2022